UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 16-20872-CIV-LENARD/GOODMAN

**JESUS LAZARO COLLAR,**

 Plaintiff,

v.

**ABALUX, INC. and
JUAN D. CABRAL,**

 Defendants.
_____/

## ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT (D.E. 58), AND GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (D.E. 68)

**THIS CAUSE** is before the Court on the Parties' cross-motions for summary judgment.

On August 25, 2017, Plaintiff Jesus Lazaro Collar filed a Motion for Partial Summary Judgment. ("Pl.'s Mot.," D.E. 58.) Defendants Abalux, Inc. and Juan D. Carbral filed a Response on September 14, 2017, ("Defs.' Resp.," D.E. 66), to which Plaintiff filed a Reply on September 19, 2017, ("Pl.'s Reply," D.E. 73).

On September 15, 2017, Defendants filed a Motion for Summary Judgment. ("Def.'s Mot.," D.E. 68.) Plaintiff filed a Response on September 27, 2017, ("Pl.'s Resp.," D.E. 77), to which Defendants filed a Reply on October 4, 2017, ("Defs.' Reply," D.E. 82). Upon review of the Motions, Responses, Replies, and the record, the Court finds as follows.

## I.     Background[1]

Abalux was a small sign company owned and operated by Juan D. Cabral, located in Hialeah, Florida. (Defs.' Facts ¶¶ 1-2.) It manufactured and installed signs, banners, and car wraps; it also sold sign-making materials to other businesses. (Id. ¶ 1.) Abalux recorded all of the revenue it received in the QuickBooks™ accounting software program. (Id. ¶ 8.)

At least as far back as 2012, Abalux used a cash/accrual basis method of accounting. (Id. ¶ 10.) This system of accounting allows a business to record a sale when the funds for the sale are actually or constructively received, and to accrue accounts payable and deduct accounts payable as an expense on its annual corporate income tax returns. (Id.)

The election of a cash/accrual method of accounting allowed Abalux to use the cash basis method as its accounting method for annual gross receipts. (Id.) Pursuant to the cash basis method of accounting, Abalux deemed a sale to be made when the services or goods were paid for by the customer, not when an invoice was created. (Id.)

Abalux elected to use a calendar year as its fiscal year so its federal corporate income tax returns were prepared based on monies it received in hand from January 1st

---

[1]    The following facts are gleaned from Defendants' Concise Statement of Material Undisputed Facts, ("Defs.' Facts," D.E. 69), Plaintiff's Statement of Material Facts in Opposition to Defendants' Motion for Summary Judgment, ("Pl.'s Resp. Facts," D.E. 78), Plaintiff's Statement of Material Facts in Support of Plaintiff's Motion for Partial Summary Judgment, ("Pl.'s Facts," D.E. 59), and Defendants' Opposing Statement of Material Facts as to Which there is a Dispute, ("Defs.' Resp. Facts," D.E. 67). All facts are undisputed unless otherwise indicated.

through December 31st of each year.  (Id. ¶ 12.)  Abalux filed federal corporate income tax returns showing the following gross sales for the year indicated:

    2012  $208,014
    2013  $368,017
    2014  $487,007
    2015  $479,014
    2016  $445,727

(Id. ¶ 13.)  Abalux filed an amended 2015 tax return showing gross receipts of $489,019.  (Id. ¶ 13 n.2.)  Abalux's tax preparer and accountant, Sergio Massa, excluded sales tax and permit fee reimbursements from gross revenue when he prepared Abalux's 2015 tax return.  (Id. ¶ 23.)

Abalux's QuickBooks registers for the years 2014, 2015, and 2016 showed the following gross receipts (which include additional sums that were not attributable to sales, such as sales tax):

    2014  $493,817.46
    2015  $505,973.33
    2016  $457.367.44

(Id. ¶ 14.)  Abalux was required to collect and remit Florida state sales tax of 7% on all taxable goods and services.  (Id. ¶ 15.)  Abalux reported the amount of sales tax it collected on a monthly basis on a form known as a "DR15," which is filed under oath.  (Id.)  Abalux filed amended DR15s for 2015, stating its tax liability to the Florida Department of Revenue as $10,467.97.  (Id.)  Of this amount, $6,255.88 was attributable to sales tax collected at the retail level.  (Id.)

Plaintiff was employed by Abalux as a laborer from August 2013 to January 2016.  (Id. ¶ 24.)  His primary responsibilities were making and installing signs.  (Id. ¶ 25.)

3

During 2015, there were weeks during which Plaintiff worked more than 40 hours but was not compensated at a rate equal to or greater than time-and-a-half. (Pl.'s Facts ¶ 2.)

## II.     Relevant Procedural History

On March 9, 2016, Plaintiff instituted this Action, filing a Complaint for overtime wage violations under the Fair Labor Standards Act, 29 U.S.C. §§ 201-216 ("FLSA"). (D.E. 1.) Therein, Plaintiff sought to recover unpaid overtime wages from 2013, 2014, 2015, and 2016. (Id. ¶ 14.) Plaintiff has since abandoned his claim for overtime wages earned in 2013. (Pl.'s Resp. at 2 ¶ 3.)

During the pendency of this case, a number of discovery issues arose. Relevant here, on August 7, 2017, Magistrate Judge Jonathan Goodman issued a post-hearing Order permitting Plaintiff to fully explore Abalux's 2015 finances, including payments received in 2016 for goods sold and services rendered in 2015. (See D.E. 54.) However, Judge Goodman did not require Defendants to produce additional discovery regarding Abalux's finances for other years. (Id. at 3.) On August 18, 2017, Plaintiff appealed Judge Goodman's Order to the undersigned District Judge in a Motion to Overrule Judge Goodman's Post-Discovery Hearing Order, Permit Depositions, Require Further Discovery Responses, and to Extend all Deadlines by at Least 90 Days. (See D.E. 56.) On October 20, 2017, the Court denied Plaintiff's Motion, finding that Judge Goodman's Order was not clearly erroneous or contrary to law. (D.E. 86.)

The Parties' cross-motions for summary judgment (D.E. 58, 68) are ripe and ready for disposition.

## III.    Legal Standard

4

On a motion for summary judgment, the Court is to construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). Summary judgment can be entered on a claim only if it is shown "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In addition, under Federal Rule of Civil Procedure 56(f)(1), the Court may grant summary judgment for the non-moving party "[a]fter giving notice and a reasonable time to respond." Fed. R. Civ. P. 56(f)(1); see also Gentry v. Harborage Cottages-Stuart, LLLP, 654 F.3d 1247, 1261 (11th Cir. 2011). The Supreme Court has explained the summary judgment standard as follows:

> [T]he plain language of [Rule 56] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986) (internal quotation omitted). The trial court's function at this juncture is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986). A dispute about a material fact is genuine if the evidence is such that a reasonable fact-finder could return a verdict for the nonmoving party. Id. at 248; see also Barfield v. Brierton, 883 F.2d 923, 933 (11th Cir. 1989).

5

The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. Once the movant makes this initial demonstration, the burden of production, not persuasion, shifts to the nonmoving party. The nonmoving party must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324; see also Fed. R. Civ. P. 56(c). In meeting this burden the nonmoving party "must do more than simply show that there is a metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). That party must demonstrate that there is a "genuine issue for trial." Id. at 587. An action is void of a material issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Id.

**IV.   Discussion**

Defendants argue that Plaintiff is not entitled to recover overtime wages under the FLSA because Abalux was not an "enterprise engaged in commerce" for any of the years at issue because it had less than $500,000 in annual gross volume of sales for those years. (Defs.'Mot at 3.)

The FLSA "requires employers who meet its preconditions to pay workers a minimum wage and to provide overtime pay where workers exceed forty hours per

6

week." Polycarpe v. E&S Landscaping Serv., Inc., 616 F.3d 1217, 1220 (11th Cir. 2010) (citing 29 U.S.C. §§ 206(a) (minimum wage), 207(a) (overtime)). "Under [the] FLSA, an employer is required to pay overtime compensation if the employee can establish enterprise coverage or individual coverage." Thorne v. All Restoration Servs., Inc., 448 F.3d 1264, 1265-66 (11th Cir. 2006). Only enterprise coverage is at issue in this case. (See Compl. ¶¶ 8, 11; Defs.' Mot. at 4.) An employer falls under the enterprise coverage section of the FLSA if it:

> [1] has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and
>
> [2] is an enterprise whose annual gross volume of sales made or business done is not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated)[.]

29 U.S.C. § 203(s)(1)(A) (emphasis added).[2]

"The annual gross dollar volume of sales made or business done of an enterprise or establishment consists of the gross receipts from all of its sales or its volume of business done during a 12–month period." 29 C.F.R. § 779.265. That twelve-month period is typically a fiscal year (which may be a calendar year), see Flores v. Nuvoc, Inc., 610 F. Supp. 2d 1349, 1357 (S.D. Fla. 2008) (finding calendar year to be appropriate period); however, under certain circumstances, annual gross volume of sales may be

---

[2] Abalux concedes that it engaged in interstate commerce and employed two or more employees who handled goods and materials that moved through commerce. (Defs.' Mot. at 4.)

7

calculated using the "rolling quarter method."[3]  29 C.F.R. 779.266; see also Flores, 610 F. Supp. 2d at 1356-58.  "Once either basis has been adopted it must be used in making subsequent calculations."  29 C.F.R. § 779.266(b).  "The sales records maintained as a result of the accounting procedures used for tax or other business purposes may be utilized in computing the annual dollar volume provided the same accounting procedure is used consistently and that such procedure accurately reflects the annual volume of sales or business."  Id.

Here, the undisputed facts establish that since at least 2012, Abalux consistently used the cash basis method for calculating gross volume of sales based on a calendar year.  (Defs. Facts ¶ 10.)  The undisputed facts further establish that Abalux's QuickBooks registers for the years 2014, 2015, and 2016 show the following gross receipts, which include certain sums not attributable to sales, such as sales tax:

    2014  $493,817.46
    2015  $505,973.33
    2016  $457.367.44

(Id. ¶ 14.)  Plaintiff presents no argument or evidence—either in support of his own Motion or in opposition to Defendants'—regarding the 2014 or 2016 gross volume of sales or business done.  Although he argues that "he needs further discovery and extensions as set forth in the Discovery Appeal, to proceed as to 2014 and 2016[,]" Judge Goodman determined that Plaintiff was not entitled to that discovery or those extensions, (D.E. 54), and this Court determined that Judge Goodman's ruling was not clearly erroneous or contrary to law, (D.E. 86).  Accordingly, the Court finds that Plaintiff has

---

[3]  Neither Party argues that the "rolling quarter method" is applicable to this case.

failed to meet his burden of producing evidence sufficient to establish a genuine issue of material fact regarding Abalux's gross volume of sales or business done in 2014 and 2016. Because the undisputed facts show that Abalux's gross volume of sales or business done was <u>at most</u> $493,817.46 in 2014, and was <u>at most</u> $457.367.44 in 2016, there is no enterprise coverage under the FLSA, and Defendants are entitled to summary judgment as to those years. <u>See</u> <u>Flores</u>, 610 F. Supp. 2d at 1357 (granting judgment as a matter of law for the defendants where the trial evidence established that the defendants' gross volume of sales or business done was less than $500,000).

With respect to 2015, the undisputed facts establish that Abalux's amended DR15 for 2015 state a tax liability of $10,467.97, of which $6,255.88 was attributable to sales tax collected at the retail level. (<u>Id.</u> ¶ 15.) Retail-level sales tax is not included in the calculation of gross volume of sales or business done for purposes of establishing FLSA enterprise coverage. 29 U.S.C. § 203(s)(1)(A)(ii). Thus, subtracting the $6,255.88 Abalux collected in retail-level sales tax from the $505,973.33 in total gross receipts, Abalux's gross volume of sales made or business done in 2015 was, <u>at most</u>, $499,717.45[4]—which is less than the $500,000 threshold for enterprise coverage under the FLSA.[5]

---

[4] Defendants further argue that an additional category of payments received should not be included in the calculation for gross volume of sales made and business done—specifically, reimbursement payments from customers on behalf of whom Abalux advanced payments to local governments for building permit fees. (Defs.' Mot. at 10-13.) It is undisputed that Abalux received reimbursement for building permit fee payments Abalux had advanced to its customers in the following amounts:

    2014   $4,122.36
    2015   $6,486.13

9

Plaintiff argues that Abalux's 2015 gross sales calculation should be increased by at least $16,527.41 (and by as much as $24,044.34), to reflect payments received in 2016 for goods sold or services rendered in 2015.  (Pl.'s Facts ¶¶ 3-4, 6; Pl.'s Resp. at 4-11.)  However, even assuming <u>arguendo</u> that Plaintiff's calculations are admissible—and Defendants persuasively argue that they are not[6]—Plaintiff's argument that they should be applied to Abalux's 2015 gross sales calculation is misplaced.

The Department of Labor's regulations expressly provide that "sales records maintained as a result of the accounting procedures used for tax or other business purposes may be utilized in computing the annual dollar volume provided the same

---

2016   $6,058.30

(Defs.' Facts ¶ 22.)  Plaintiff argues that Defendants are not entitled to subtract these figures from the total gross receipts.  (Pl.'s Resp. at 11-13.)  The Court need not determine whether these reimbursement payments should be excluded from the gross volume of sales made and business done calculation because even if they are included, Abalux is still under the $500,000 threshold for enterprise coverage.

[5]   In 2014, Abalux collected $8,880.88 in sales tax, retail and wholesale combined.  (Defs. Facts ¶ 15.)  In 2016, Abalux collected $9,140.35, in sales tax, retail and wholesale combined.  (<u>Id.</u>)  Defendants did not break down the 2014 and 2016 sales tax figures into retail and wholesale sales, because even if the entire amount of sales tax collected for those years was deemed to be a the wholesale level (and therefore not subtracted from the gross receipts figure), Abalux's gross volume of sales for those years would still be less than $500,000.  (<u>See</u> Defs.' Mot. at 9 n.8.)

[6]   Defendants' calculations and the relevant factual assertions that accompany them are located in Paragraphs 3, 4, and 6 of Plaintiff's Statement of Material Facts in Support of Plaintiff's Motion for Partial Summary Judgment. (D.E. 59.)  Defendants have moved to strike those Paragraphs because: the calculations and statements constitute expert opinions; the calculations were done by Plaintiff's attorney; Plaintiff's attorney is not designated as an expert witness; Plaintiff's failure to comply with Rule 26(a)(2) deprived Defendants of the opportunity to designate their own expert to examine and rebut these calculations; the statements and calculations are unsupported by any evidence; the calculations are speculative; the statements containing the calculations are conclusions of law; and Plaintiff is attempting to relitigate his Motion to Overrule Judge Goodman's Post-Discovery Hearing Order, Permit Depositions, Require Further Discovery Responses, and to Extend all Deadlines by at Least 90 Days.

10

accounting procedure is used consistently and that such procedure accurately reflects the annual volume of sales or business." 29 C.F.R. § 779.266(b).  The undisputed facts establish that since 2012, Abalux has consistently used a cash basis method as its accounting method for annual gross receipts. (Facts ¶ 10.)  This method allows Abalux to record a sale when the funds for the sale are actually or constructively received, not when the invoice is created. (Id. ¶¶ 10-11.)  Abalux elects to use the calendar year as its fiscal year so its federal corporate income tax returns were prepared based on monies it received in hand from January 1st through December 31st of each year, regardless of when the invoice for those payments were created. (Id. ¶ 12.)  Therefore, any payments received in 2016 for goods sold or services rendered in 2015 were properly applied to the 2016 gross sales calculation to be consistent with prior years' accounting methods. See 29 C.F.R. § 779.266(b).

Although Plaintiff argues that it is "preferable" to use an accrual accounting method in which late payments received are applied to prior year sales figures, (Pl.'s Resp. at 6 (citing Arilus v. Joseph A. DiEmmanuele, Jr., Inc., 895 F. Supp. 2d 1257, 1265 (S.D. Fla. 2012), aff'd 522 F. App'x 881))), it cites to no authority holding that such a method is required.  To the contrary, in Arilus, the Eleventh Circuit affirmed the entry of summary judgment in favor of an employer that used a cash basis method of accounting. 895 F. Supp. 2d at 1264, aff'd 522 F. App'x 881.  Moreover, several courts have concluded that a business's total gross volume of sales or business done may be determined from its tax returns. Flores, 610 F. Supp. 2d at 1355-56; Stout v. St. Amour's Lawn Care, LLC, No. 6:07-cv-1882-Orl-19UAM, 2008 WL 816818, at *2 (M.D. Fla.

Mar. 25, 2008); Lopez v. Top Chef Inv., Inc., No. 07-21598-CIV, 2007 WL 4247646, at *3 (S.D. Fla. Nov. 30, 2007); Thompson v. Robinson, No. 6:06-cv-771-Orl-19JGG, 2007 WL 2714091, at *4 (M.D. Fla. Sep. 17, 2007); Xelo v. Mavros, No. 03-CV-3665 (NG)(MDG), 2005 WL 2385724, at *3 (E.D.N.Y. Sept. 28, 2005); Avila v. Lee, No. G88-749, 1989 WL 200976, at *2 (W.D. Mich. July 13, 1989) ("While tax returns are not necessarily determinative of gross annual sales, they may be utilized by the defendant as long as the same accounting procedure is used consistently and the procedure accurately reflects the annual volume of sales or business."). Because Defendants consistently used the acceptable cash basis method as its accounting method for annual gross receipts, payments received in 2016 for sales made or services rendered in 2015 are not included in the 2015 calculation of gross volume of sales or business done.

Because Abalux's gross volume of sales made or business done was less than $500,000 in the years 2014, 2015, and 2016, there is no enterprise coverage under the FLSA and Defendants are entitled to summary judgment. See Arilus, 895 F. Supp. 2d at 1267, aff'd 522 F. App'x 881; Flores, 610 F. Supp. 2d at 1355-58.

## V.  Conclusion

Accordingly, it is **ORDERED AND ADJUDGED** that:

**1.**   Plaintiff's Motion for Partial Summary Judgment (D.E. 58) is **DENIED**;

**2.**   Defendants' Motion for Summary Judgment (D.E. 68) is **GRANTED**;

**3.**   Final Judgment shall be entered by separate Order;

**4.**   All pending motions are **DENIED AS MOOT**; and

**5.**     This case is now **CLOSED**.

**DONE AND ORDERED** in Chambers at Miami, Florida this 22nd day of January, 2018.

*Joan A. Lenard*
**JOAN A. LENARD**
**UNITED STATES DISTRICT JUDGE**