UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division
Case No. 16-cv-20872-LENARD/GOODMAN

JESUS LAZARO COLLAR,

     Plaintiff,

v.

ABALUX INC. and JUAN D. CABRAL,

     Defendants.

_____/

## **DEFENDANTS' VERIFIED MOTION FOR AWARD OF SANCTIONS**

     ABALUX, INC.,("Abalux"),and JUAN D. CABRAL ("Cabral") through undersigned counsel and pursuant to Rule 11, the Court's inherent authority and 28 U.S.C. § 1927 and Local Rule 7.3(a), move the Court to award sanctions jointly and severally against J.H. Zidell, Esq., David Kelly, Esq. Rivkah Jaff, Esq. and the law firm of J.H. ZIDELL, P.A., collectively referred to in this motion as "Plaintiff's Counsel" and as grounds for the relief sought state:

1.     The judgments or orders which give rise to the claims for attorney's fees and costs are the Court's grant of summary judgment and entry of final judgment in favor of Defendants and denial of Plaintiff's Motion for Partial Summary Judgment.  [DE 97 and 98] as well as its order striking Plaintiff's Acceptance of Offer of Judgment [DE 101].   The facts which support sanctions are as follows:

2.     On 3/9/16, Plaintiff's Counsel filed this action ("the Lawsuit") without first contacting Defendants to determine if Abalux, a small company in Hialeah, FL, was covered by the FLSA. Defendants learned of the Lawsuit through solicitation letters.

Langbein & Langbein, P.A. ("Defense counsel") was recommended to them. Exhibit "J"

3.   Defendants set up a consultation with attorney Leslie W. Langbein, Esq. Mrs. Langbein advised Defendants that her normal hourly rate for new clients involved in federal litigation was $400.00 per hour.   Mr. Cabral stated that he and his business could not afford to pay that hourly rate.

4.   During their discussion, Mr. Cabral told Mrs. Langbein that Abalux never had grossed $500,000.00 or more in sales in the years 2013, 2014 or 2015.   Mrs. Langbein encouraged Mr. Cabral to voluntarily disclose Abalux's 2013 and 2014 corporate tax returns and its Florida Department of Revenue monthly sales tax reports ("DR-15s") for 2015 to prove that.   (Abalux's 2015 tax return had not been filed yet and it was too early to determine  2016's revenue). She advised Mr. Cabral that lawyers were obligated to dismiss a case when there was no basis in fact or law for the claim.   Defendants agreed to this course of action.   Exhibit "J".

5.   With that strategy in mind, Mrs. Langbein offered to reduce her hourly rate to $325.00 per hour during her attempt to gain Plaintiff's Counsel's voluntarily dismissal of the lawsuit.   But, she and Mr. Cabral agreed that if this approach was unsuccessful and the lawsuit ontinued, her hourly rate would be set as a minimum fee of $325.00 per hour or a reasonable hourly fee to be set by the Court should Defendants ever be in a position to be awarded fees. They entered into a retainer agreement.   See declarations of Leslie W. Langbein and Juan D. Cabral. Exhibit "J"

6.    On 3/17/16, Defense counsel emailed associates Ms. Jaff and Mr. Kelly to inform them she would be representing Defendants and that Abalux did not meet the $500,000.00 threshold for enterprise coverage for years 2013, 2014 and 2015. See Exhibit "A"    Neither responded to the email.

7.    On 4/8/16, Defense counsel emailed Plaintiff's Counsel copies of the face page of ABALUX's 2013 and 2014 tax returns and of Abalux's monthly DR-15s for 2015. The tax returns showed gross sales of $368,017 in 2013 and $487,007 in 2014. The 2015 DR15's showed gross sales of $479,406. A request was made to dismiss the Lawsuit.  Exhibit "A". None of the lawyers responded to the email.

8.    On 4/19/16, Defense counsel sent another email to Plaintiff's Counsel to ascertain their intent to move forward. Ms. Jaff responded that Plaintiff's Counsel was proceeding forward and it intended to depose Abalux's accountant. "Exhibit "A".

9.    On 4/20/16, Defendants served Plaintiff's Counsel with a Rule 11 motion. [Exhibit "D"].  The safe harbor period passed.  Plaintiff's Counsel refused to dismiss the lawsuit. In response, Plaintiff's Counsel served Defendants with Requests for Admissions ("RFA's"), Requests for Production ("RFP's") and Interrogatories.

10.   Abalux is so small a company it employs only one administrative/clerical employee, Michelle Marcos.  Ms. Marcos and Cabral were forced to set aside their daily company responsibilities in order to gather the information and documents necessary to respond to Plaintiff's discovery requests.

11.   Defendants also incurred fees drafting discovery requests served on Plaintiff. Plaintiff's responses to those requests, served on 12/30/16, indicated he had *no*

_information_ that contradicted Abalux's corporate income tax returns for 2013 2014 or 2015.  [Exhibit "B."]

12.    With the idea that voluntary disclosure of more information would hasten the lawsuit's  dismissal, on 1/12/17, Abalux produced to Plaintiff's Counsel copies of its monthly DR-15 reports for years 2013, 2014, and 2016, as well as the face page of its now filed 2015 corporate tax return which showed gross sales of $479,014. Though Plaintiff's Counsel had all the information necessary to determine lack of enterprise coverage for each of the three years preceding the Lawsuit, it did not dismiss the lawsuit.   Instead, it set the depositions of Abalux's Rule30(b)(6) representative and Cabral.  Defendants served its ***second Rule 11 motion*** on Plaintiff's Counsel  on 1/24/17.  [Exhibit "D"].

13.    Ms. Marcos appeared (as Abalux's Rule 30(b)(6) representative) with  Cabral for depositions on 2/24/17. Ms. Marcos testified that Abalux accounted for all of its revenue from sales and from non-sale sources in Quickbooks.  She also testified that Abalux deposited all receipts (whether cash, credit cards, checks or EFT's) into its single Chase bank account and the deposits into that account included revenue from non-sale sources like state sales tax.

14.    Plaintiff's Counsel then served Abalux with additional RFP's on 3/7/17 seeking, among other things, its _complete_ Quickbooks registers for years 2012-2016. ABALUX objected to production of the full registers which contained trade secrets such as the identity of its customers, their order levels and the price quotes. [1]  It also objected to the burdensome nature of the RFPs, in particular the time and

---

[1]    Plaintiff admittedly began working for a competitor of ABALUX after he resigned.

expense it would cost Abalux to redact confidential and proprietary information from the Quickbooks registers and the difficulty it would encounter trying to maintain its business while Ms. Marcos' daily duties were neglected.

15.   On 3/8/17, Abalux produced _full copies_ of its 2012, 2013, 2014 and 2015 federal corporate tax returns. Schedule K of each return indicated that Abalux used a _cash basis method of accounting_ which is both an IRS and DOL accepted method of accounting.  Abalux served its third Rule 11 motion on Plaintiff's Counsel on 3/9/17. [Exhibit "D"].  The safe harbor period expired.

16.   Plaintiff's Counsel deposed Abalux's accountant, Sergio Massa, on 4/19/17.  He produced a full copy of Abalux's 2016 tax return, filed just days earlier.  The tax return reflected $445,728 in gross sales for 2016.  Mr. Massa affirmed that Abalux continuously had used a cash/accrual method of accounting since 2012.  He indicated Abalux's tax year began on January 1st.  Plaintiff's Counsel ignored Cabral, Marcos and Massa's testimony and demanded Abalux produce its full monthly bank statements for the years 2012-2016.  Abalux agreed to produce redacted bank records showing only its deposits to prevent disclosure of information about its customers and operating expenditures.

17.   Plaintiff was deposed on 4/25/17. He admitted no personal knowledge of ABALUX's annual gross volume of sales during the period of 2013-2016.  He had no documents or information that challenged the accuracy of Abalux's tax returns.  His claim for enterprise coverage was based on a single observation on an unknown day in an unknown year of a monitor screen displaying sales of

somewhere between $3000-$5000, and his guess as to how much Abalux's employees earned.  [Exhibit "C"].

18.     Abalux's redacted bank deposit statements for years 2012, 2013, 2014 and 2016 were forwarded to Plaintiff's Counsel on 5/12/17 (2015 statements had not yet been received from the bank). The bank statements _proved_ that Abalux did not have revenue (much less sales) of $500,000.00 in 2013, 2014 and 2016 _even including revenue attributable to sales tax and other non-sale sources of revenue._ Plaintiff's Counsel refused to dismiss any portion of the Lawsuit. On 5/16/17, Abalux served Plaintiff's Counsel with a fourth Rule 11 Motion.  [Exhibit "D"].

19.     Abalux's 2015 bank deposit statements were produced on 6/5/17 with a sworn declaration by Ms. Marcos.  The statements showed $508,518.69 in total deposits for 2015.  Ms. Marcos' declaration explained that the figure included sales tax collected on sales, permit fee reimbursements, refunds and other sources of revenue not derived from sales.  On the same day, Abalux served Plaintiff's Counsel with a fifth Rule 11 motion.   [Exhibit "D"].

20.     A discovery hearing was held 4 days later on 6/9/17 before Magistrate Judge Goodman. He ordered Abalux to produce redacted Quickbooks registers for years 2014, 2015 and 2016 showing only the revenue derived from sales. Judge Goodman excluded the 2013 register _because the gross sales reflected on Abalux's 2013 tax return was so low, it was improbable Plaintiff's Counsel could prove additional revenue to meet or exceed the $500,000.00 threshold for enterprise coverage._  Judge Goodman ruled that if any one of the Quickbooks

registers failed to establish enterprise coverage *he would tax the costs of the production on Plaintiff or if Plaintiff could not pay, Plaintiff's Counsel*. [DE 39].

21.     On 6/12/17, Defense counsel emailed Ms. Jaff to see if Plaintiff's Counsel was dismissing 2013 from the Lawsuit given Judge Goodman's remarks. See Exhibit "E".  Plaintiff's Counsel's response was *to serve yet another round of RFPs and Interrogatories*.

22.     Abalux complied with Judge Goodman's order on 7/7/17.  It produced the registers and another sworn declaration by Ms. Marcos. [Exhibit "F"]. The 2014 and 2016 Quickbook registers showed total receipts from sale (and non-sale sources) of less than $500,000.00.  Plaintiff's Counsel refused to dismiss 2013, 2014 and 2016 from the Lawsuit.

23.      Despite extensive documentation that proved Abalux's lack of enterprise coverage, Plaintiff's Counsel refused to concede.  Mr. Kelly noticed Ms. Marcos and Mr. Massa for additional depositions to take place on 7/20/17 without complying with Rule 30(a)(2)(A). Abalux sought protective relief. Judge Goodman granted it as to Mr. Massa's re-deposition.

24.     Mr. Kelly and Ms. Jaff served even ***more discovery requests*** on 7/13, 7/14, and 7/18/17.  RFP's sought invoices for sales made to specific customers [2] and proof of when their payment had been received.  Defendants objected to the discovery

---

[2]    Unquestionably, Plaintiff provided his counsel with the names of Abalux's customers. The RFP was particularly troubling since Judge Goodman had ruled at the 6/9/17 hearing that Plaintiff's Counsel could not request confidential and proprietary information regarding Abalux's customers.

requests on the bases of trade secrets and customers' lack of knowledge of Abalux's annual gross volume of sales.

25.     At her second deposition, Ms. Marcos testified that Abalux's business practices were to record all sales in Quickbooks on the date a sale was made and to immediately deposit any cash and checks it received from sales into its bank account because of cash flow issues.  Ms. Marcos testified that she recorded sales in Quickbooks as being made on the day payment was received, i.e., sales paid for by credit card were recorded as being made on the date the credit card was run through a terminal and sales by EFT were recorded in Quickbooks on the date the sale was made, not the date funds were transferred.    Abalux's standard business practice was COD; very few customers were given time to pay.

26.     Mr. Zidell then surprised Ms. Marcos with a large 3 ring-binder containing print-outs of ABALUX's Quickbooks registers for 2013, 2014 and 2015.  He also handed her yearly "summaries" prepared by an unknown person from his law firm. Each yearly "summary" compared the total sales recorded by ABALUX in Quickbooks against its total bank deposits and the gross sales figure reported on its tax return. The "summaries" (actually charts) purported to establish that ABALUX's Quickbooks registers were unreliable and Abalux's tax returns for years 2014, 2015 and 2016 were inaccurate.  Each "summary" contained a hand-written figure at the bottom that was purported to be the "true" gross volume of sales for 2014,

2015 and 2016. ³  [Exhibit "G"]. ⁴

27.     When Ms. Marcos returned to her office later that day, she compared the figures
on the summaries to those reflected on Abalux's previously produced Quickbooks
registers, bank account deposits and tax returns. She realized that the purported
discrepancies were caused when the unknown person who prepared the
summaries transposed certain numbers and improperly added figures in columns.
[Marcos Declaration [DE 66-5].  Ms. Marcos cross checked the original figures
against the figures on the summaries using Excel spreadsheets.

28.     Despite that there was not a single fact supporting continuance of the Lawsuit, on
7/24/17 Plaintiff's Counsel served yet another round of discovery requests.  It
issued notices setting Defendants' customers for deposition.   Once again,
Defendants objected.  An expedited discovery hearing was scheduled for 8/3/17.
Plaintiff's Counsel also moved to extend discovery so it could serve additional
discovery requests  regarding 2013. [DE 48 and 50].

29.     Abalux served its sixth Rule 11 motion on 8/3/17 before that afternoon's discovery
hearing along with a report prepared by Quickbooks that totaled its bank deposits
for 2014-2016, the Excel spreadsheet showing the total amount of sales it had
reported on DR-15s during the same years; sample invoices proving sales tax was
separately  stated  on  customer  invoices,  and  customer  invoices  billing  for

---

³    Each of the "true" figures hand-written on the "summaries" was below $500,000.00,
proof that even with their flaws, the exhibits did not even support continued litigation.

⁴    The print-outs of the Quickbooks registers showed that someone had added up all of
the sales transactions by hand.  Mr. Zidell would not allow Ms. Marcos to take copies of
the notated registers. He conceded to give Ms. Marcos copies of the "summaries".

reimbursement of permit fees for which Abalux had laid out its own money. [Exhibit "H"].  Plaintiff's Counsel also was told that Abalux was reviewing its 2015 sales tax collections to determine which were attributable solely to retail sales.

30.   Plaintiff's Counsel next tried to overcome Abalux's lack of enterprise coverage by arguing that the FLSA required sales to be measured using the accrual method of accounting.   They moved Judge Goodman to compel Abalux to produce documents showing the 12/15 sales that had been paid in 2016, claiming those sales were attributable to 2015. Judge Goodman granted the request but for the purpose of determining whether the income should be attributed to 2015 rather than 2016 as constructive income. [DE 54].   Abalux produced the additional information and documents on 8/16/17.  It thereafter served Plaintiff's Counsel with its seventh Rule 11 motion.   [Exhibit "D"].

31.   Despite the lack of a single fact to support enterprise coverage in ___**any year**___, Plaintiff's Counsel moved for Partial Summary Judgment ("PSJ") as to 2015.  It supported the PSJ with the self-created "summaries" and the documents Abalux produced on 8/16/17 to establish which 2015 sales had been paid in 2016. [DE 58].  It argued that Abalux was ___**required to use**___ an accrual method for accounting and mis-cited the holdings of _the Arilus decisions._   The motion failed to cite 29 C.F.R. 779.265, an important authority on accounting methods under the FLSA. In its "never say die" campaign to keep the Lawsuit alive, Plaintiff's Counsel expressly reserved the right ___**to continue discovery regarding Abalux's gross sales for the years 2013, 2014 and 2016**___.  On 9/1/17, Defendants produced  to

Plaintiff's Counsel an amended 2015 tax return, amended 2015 DR-15s [5] and a declaration that attested to the amount of sale tax attributable only to retail sales in 2015. These documents did not change the fact that Abalux did not meet the $500,000.00 threshold for enterprise coverage in 2015.

32.     Defendants incurred more legal fees responding to the PSJ.  Defendants cited the Arilus decisions, IRS Publication 538 and 29 C.F.R. 779.265--placing Plaintiff's Counsel on notice that its argument regarding the accrual method of accounting was frivolous. *Attached to Defendants response was a declaration from Ms. Marcos attesting that the "summaries" submitted to the Court by Plaintiff's Counsel in support of PSJ contained wholly inaccurate figures.* [DE 64 and 66].  Plaintiff's Counsel did not withdraw the "summaries" once it became aware of this.

33.     Plaintiff's Counsel's intransigent refusal to concede required ABALUX to incur even more attorney's fees to draft and file its own summary judgment motion for all years.[DE 68 and 69]   Plaintiff's Counsel opposed the summary judgment motion and persisted in re-arguing that the accrual method of accounting must be used to determine gross volume of sales. [DE 77]. Defendants' legal fees increased when Defense Counsel had to research and draft a reply.  [DE 82]

34.     Plaintiff's Counsel's failure to act in good faith in accord with Rule 11 caused Defendants to amass more legal fees to prepare a Joint Pre-Trial Stipulation, witness and exhibit lists and jury instructions. [DE 88 and 89].   Since seven Rule 11 motions had failed to convince Plaintiff's Counsel to give up, Defendants finally

---

[5]    Defendants' summary judgment motion explained the need to amend Abalux's 2015 tax returns and DR-15s.

resorted to serving an Offer of Judgment on 1/17/18 in a last ditch effort to end the lawsuit.

35. Five days later, the Court denied the PSJ and granted Defendants' summary judgment motion and entered final judgment in their favor.   [DE 97 and 98].   Not to be so easily defeated, Plaintiff's Counsel's then tried to accept the Offer of Judgment on 1/26/18 despite case law holding that a court's entry of a final judgment invalidated an offer of judgment. [DE 99].   Defense counsel immediately emailed Plaintiff's Counsel, demanded that it withdraw the acceptance and explained why it was invalid. [Exhibit "I"]. Plaintiff's Counsel refused. On 1/27/18, Defense counsel researched and drafted a Motion to Strike and Invalidate the Acceptance.   Defense counsel conferred twice more with Plaintiff's Counsel before filing the motion.  In the interim, the Court issued its own order striking the Notice of Acceptance. [DE 101].

36. Plaintiff's Counsel still refused to concede. It filed a Motion for Reconsideration based on "clear error."  Abalux drafted a response to distinguish the cases cited by Plaintiff's Counsel.  [DE 104].   The Court denied reconsideration.

37. In the course of defending the lawsuit, Defendants and Defense Counsel overlooked the need to amend their initial retainer agreement.  The amendment finally was drafted and executed to conform with the Defendants' earlier understandings and agreement.   The amendment's effective date was made retroactive to the date of the initial retainer agreement.

38.    Through the date of this motion, Defense counsel accrued over 160 hours defending the Lawsuit.   Defendants seek to recover $64,000.00 in fees for just 160 hours at the rate of $400.00 per hour plus any additional fees incurred.

<u>Certification of Good Faith Conference</u>

Per L.R. 7.1 and 7.3 Defense counsel certifies that she served this motion on Plaintiff's Counsel on 2/13/18 in an effort to confer in a good faith to resolve the issues. Plaintiffs' Counsel responded on 3/12/18, " Leslie: We have conferred with you, and if you file it, we will be constrained to file a motion for sanctions against you and Defendants for vexatious litigation, and we will bring to the court's attention your pattern of filing these motions in several cases over the last year, which appear to be transparent attempts to churn the files."

**<u>Memorandum of Law</u>**

When an attorney files a claim or any paper in a case, he or she certifies there is a good faith basis in fact or law for the allegations made therein.   Fed. R. Civ. P. 11(b)-(c).  Rule 11 sanctions are proper (1) when a party files a pleading, paper or motion that has no reasonable factual basis; (2) when the party files a pleading, paper or motion that is based on a legal theory that has no reasonable chance of success and that cannot be advanced as a reasonable argument to change existing law; and (3) when the party files a pleading, paper or motion in bad faith for an improper purpose.  <u>Jones v. Int'l Riding Helmets, Ltd.</u>, 49 F.3d 692, 694 (11th Cir. 1995).

Attorneys not only are obligated to properly investigate the facts underlying claims before they file suit, but throughout the suit as well.  Rule 11 applies when an attorney knowingly continues to litigate a matter or an issue after it becomes clear there is no good faith basis in law or fact for the action or position.  The same conduct is proscribed by  28

USC §1927. *Avirgan v. Hull*, 932 F.2d 1572, 1582 (11th Cir. 1991) citing *Collins v. Walden*, 834 F.2d 961, 965 (11th Cir. 1987)["When it becomes apparent that discoverable evidence will not bear out the claim, the litigant and his attorney have a duty to discontinue their quest."]

The standard for imposing sanctions turns on the attorney's objective conduct as compared with how a reasonable attorney would have acted under the circumstances. *Norelus v. Denny's Inc.*, 628 F.3d 1270, 1282 (11th Cir. 2010) (quoting *Amlong & Amlong, P.A. v. Denny's Inc.*, 500 F.3d 1230, 1236 (11th Cir. 2007)). [E.S.]. Objectively reckless conduct is sufficient to justify sanctions even if the attorney does not act knowingly and malevolently. <u>Id</u>. at 1291.

Courts also have inherent power to levy sanctions against litigants for abuse of the judicial system even if procedural rules exist which sanction the same conduct. *Chambers v. Nasco, Inc.*, 501 U.S. 32, 43, 111 S. Ct. 2123, 2132, 115 L. Ed. 2d 27 (1991). *Meidinger v. Health Care Oligopoly*, 2010 U.S. App. LEXIS 16448 (11th Cir. 8/9/10); *Glatter v. Mroz*, 65 F.3d 1567, 1573 (11th Cir. 1995). *Malautea v. Suzuki Motor Co.*, 987 F.2d 1536, 1546 (11th Cir. 1993). One aspect of a court's inherent power is the ability to assess attorneys' fees and costs against the client or his attorney, or both, when either has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers*, *supra* at 2133. "The key to unlocking a court's inherent power is a finding of bad faith." *Barnes v. Dalton*, 158 F.3d 1212, 1214 (11th Cir. 1998); see also *Mroz*, *supra* at 1575.

28 U.S.C. § 1927 is a third avenue to curb abuse of the judicial process. Its purpose is to deter frivolous litigation and abusive practices by attorneys and to ensure that those who create unnecessary costs bear them. *Roadway Express  v. Piper*, 447

U.S. 752, 65 L. Ed. 2d 488, 100 S. Ct. 2455 (1980).  28 U.S.C. § 1927 imposes three essential requirements: (1) the attorney must engage in unreasonable and vexatious conduct; (2) that conduct must multiply the proceedings; and (3) the amount of the sanction must bear a "financial nexus to the excess proceedings." *Peterson v. BMI Refractories*, 124 F.3d 1386, 1396 (11th Cir. 1997).

<u>The Sanctionable Conduct</u>.

The chronology recited above amply demonstrates that from the lawsuit's inception, Plaintiff's Counsel acted recklessly, wantonly, unreasonably and for improper purposes.  The sanctionable conduct began pre-suit:  Plaintiff's Counsel made no effort to contact Defendants to determine if Abalux – a small sign company in Hialeah, FL-- qualified for enterprise coverage. [6]   It certainly could not depend on its client to satisfy Rule 11.  Plaintiff admittedly had no access to Abalux's income tax returns, Quickbooks registers, DR-15s, bank statements, or even pricing. [7]  Plaintiff's Counsel filed the Lawsuit <u>*without having a single fact*</u> to support the most fundamental element of any overtime claim:  FLSA coverage.   See 11th Cir. Pattern Jury Instruction 4.12.

Whatever inquiry Plaintiff's Counsel claim to have had to justify filing the lawsuit on 3/9/16 foundered a month later on 4/8/16, when Abalux -in a bid to short-circuit lengthy, expensive FLSA litigation which it could ill afford-- voluntarily produced the first pages of

---

[6]      Mr. Zidell is estopped from arguing that Rule 11 required him to make a pre-suit inquiry since he raised this very same argument against the plaintiff's attorney in *Bacallao v. Jamie H. Zidell and JH Zidell, P.  A.*, USDC Case No. 16-20709-cv-AOR [DE 58] as the bad faith reason why the attorney should be denied an award of fees.

[7]      Defendants incorporate by reference their Statement of Undisputed Facts and all materials supporting their summary judgment motion.

its 2013 and 2014 corporate tax returns and redacted DR-15s for 2015. Those (in particular the 2013 return) established *prima facie* that Abalux did not qualify as an enterprise engaged in commerce for 99% of Plaintiff's claim. (Plaintiff worked only 2 weeks in 2016. See [DE 9]). Yet, despite 11th Circuit case law holding that tax returns are dispositive of enterprise coverage *unless* a plaintiff can articulate a specific reason to challenge their accuracy, *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292(11th Cir. 2011), [8]/ [9] Plaintiff's Counsel never articulated a specific reason to dispute Abalux's tax returns yet embarked on an odyssey to rifle through Abalux's proprietary books and records to uncover *anything* that might create a disputed issue of fact.

During this mission Plaintiff's Counsel encountered numerous omens that its search would be in vain. These included: Abalux's complete tax returns for the years 2012-2016 (produced on 3/9/17 and 4/19/17), DR-15's for the years 2012-2016 (produced on 4/8/16 and 1/12/17); Quickbooks registers showing sales for years 2014-2016 (produced on 7/7/17); bank deposit statements for 2012-2016 (produced on 5/12/17 and 6/5/17); numerous sworn declarations from Abalux's Rule 30(b)(6) representative (4/6/17, 6/2/17, 7/7/17 and 9/1/17); two depositions of Abalux's Rule 30(b)(6) representative

---

[8]  See also *Flores v. Nuvoc, Inc.*, 610 F. Supp. 2d 1349, 1355 (S.D. Fla. 2008); *Hernandez v. Nanju Corp.*, 2008 U.S. Dist. LEXIS 35481 (S.D. Fla. 2008); Lopez v. Top Chef Inv., Inc., 2007 U.S. Dist. LEXIS 88120(S.D. Fla. 2007); *Whineglass v. Smith*, 2013 U.S. Dist. LEXIS 71977 (M.D. Fla. 2013); *Thompson v. Robinson, Inc.*, 2007 U.S. Dist. LEXIS 68445 (M.D. Fla. 2007); *Bellows v. Darby Landscaping*, 2016 U.S. Dist. LEXIS 7416 (D. Md. 2016); *Jacoby v. Schimka Auto Wreckers, Inc.*, 2010 U.S. Dist. LEXIS 81586 (N.D. Ill.2010).; *Rivera v. Heights Landscaping, Inc.*, 2004 U.S. Dist. LEXIS 3746 (N.D. Ill. 2004).

[9]  Plaintiff's responses to Defendants' RFA's admitted that he had no information that challenged the accuracy of Abalux's tax returns. See responses to RFA's 25, 26 and 28 served on 12/20/16 included in Defendants' Appendix to Summary Judgment. [DE 68]

(2/27/17 and 7/20/17); Mr. Cabral's deposition (2/27/17) ; the deposition of Abalux's accountant (4/19/17); a court order obligating it to pay costs if additional discovery did not establish enterprise coverage (6/12/17) [DE 39], and seven Rule 11 motions served on it by Abalux's counsel (4/20/16, 1/24/17, 3/9/17, 5/16/17, 6/5/17, 8/3/17 and 8/16/17).

None gave Mr. Zidell, Mr. Kelly or Ms. Jaff the slightest pause, although reasonable and seasoned employment lawyers would have conceded lack of enterprise coverage, especially after Abalux voluntarily produced its 2016 DR-15s and 2015 tax return. Instead, the attorneys and the law firm turned a blind eye to objective evidence that their client's FLSA claim was unsupportable and stubbornly clung to the same wing and prayer on which the lawsuit had been based from its inception.  Dismissal was not considered an option -- not even for 2013 --a year in which establishing enterprise coverage was highly improbable.

Neither reason, ample case law, DOL regulations, IRS publications nor lack of facts stood in the way of Plaintiff's Counsel dogged pursuit of the lawsuit. Plaintiff's Counsel used discovery as a means to place financial pressure on Abalux.  Each time a Rule 11 motion was served, Plaintiff's Counsel fought back by serving additional discovery requests (five in all), setting more depositions or seeking discovery hearings. Even the glare of voluminous financial information voluntarily disclosed by Abalux did not overcome Plaintiff's Counsel's "blindness" to lack of enterprise coverage.   .  Their goal throughout this litigation was to continue their "quest" regardless of its merit or the consequential time and expense caused to the Defendants and to the Court.  The judicial system became their "weapon of choice" in a battle to beat Defendants into submission.

Numerous discovery requests had no purpose other than to harass Defendants. As examples, Plaintiff's Counsel served supplemental RFP's on 3/7/17 (after Defendants second Rule 11 motion) that requested, among other things

1. **Any and all receipts showing payments received by Defendants' by their customers/clients by cash check, credit card, and any other means of payment for the years 2012, 2013, 2014, 2015, and 2016.**

RFP # 2 sought "all receipts showing payment made by Defendants' customers" for the same years. Ms. Marcos' 4/4/17 declaration estimated that responding to these requests would require her to find 9000 invoices and corresponding 9000 payments and the time it would take to accomplish this would paralyze Abalux's business functions. [DE 33]. Unquestionably Plaintiff's Counsel knew and understood the effect such a request would have on a small business. Moreover, Ms. Marcos already had testified at her 2/27/17 deposition that all revenue from all sources was deposited into Abalux's sole bank account. The RFPs, therefore, were superfluous and had no purpose other than to harass Defendants, exert financial pressure and damage Abalux's ability to carry on its business.

The same purposes underlie Plaintiff's Counsel's discovery requests seeking invoices for all sales made to seven large customers of Abalux and then trying to set their depositions.[10] Defendants were forced to move for protective relief to prevent disclosure of their trade secrets and harassment of their customers. At hearing, Mr. Kelly attempted to justify the RFPs by claiming the customers would have knowledge of Abalux's gross volume of sales. This was contrived and nonsensical. That would be akin to arguing that a customer who dropped his shirts off at a favorite dry-cleaner, he would know whether the dry-cleaner had annual sales of $500,000.00 or more.

---

[10]   The identity of these customers most certainly disclosed by Plaintiff.

Plaintiff's Counsel then changed strategies: they manufactured evidence to create a disputed issue of fact. The "summaries" were created to discredit the accuracy and trustworthiness of Abalux's Quickbooks registers and tax returns. The "true" figures touted in the "summaries" were generated by one of Plaintiff's Counsel's office staff who manually added the entries in the Quickbooks registers (whereas Abalux created the registers using the accounting software. While the "summaries" purported to prove discrepancies in Abalux's figures, they instead contained discrepancies themselves caused by transposed numbers and addition errors. Mr. Zidell and Mr. Kelly submitted the summaries to the Court and never withdrew them even after learning of their inaccuracy from Ms. Marcos' declaration submitted in opposition to the PSJ. Plaintiff's Counsel apparently did not care that the Court might rely on false data to rule on their PSJ. Creating evidence to foil entry of summary judgment is the essence of bad faith.

Mr. Zidell and Mr. Kelly also adopted a wholly unsupportable legal theory to support the PSJ and defend against Abalux's summary judgment motion. They claimed that Abalux was bound to use an accrual method of accounting despite that there was no support whatsoever for this principal in law, IRS publications or DOL regulations. Plaintiff's Counsel displayed a total lack of candor to the Court by failing to cite or discuss 29 CFR 779.265, a DOL regulation that permits an employer to choose its own method of accounting as a basis to determine annual gross volume of sales in its PSJ. And, Mr. Zidell and Mr. Kelly ignored clear 11th Circuit precedent in favor of reliance on dicta in *Centeno–Bernuy v. Becker Farms,* 564 F.Supp.2d 166 (W.D.N.Y.2008) -- a case from another circuit. If they were advancing a new theory that the accrual method of

accounting was the required method of determining annual gross volume of sales, their theory had no reasonable chance of success.

In *Rodriguez v. Marble Care Int'l, Inc*, 863 F. Supp 2d 1168 (S.D. Fla. 2012),  the court held that an award of attorney fees was warranted as a sanction for filing and maintaining a frivolous lawsuit when the attorneys failed to conduct a pre-suit inquiry to determine if the employer was subject to an FLSA claim, filed the claim anyway, sought to take irrelevant discovery to impose financial pressure on employer, persisted in prosecuting the claim even though they never had necessary evidence to establish FLSA jurisdiction, and "ignored unrebutted evidence that employer was not subject to the FLSA.." [E.S.]  Two of the attorneys sanctioned in *Rodriguez* were Mr. Zidell and Mr. Kelly. The fact that they engaged in the exact same conduct here as they previously did in *Rodriguez*-- after being sanctioned -- establishes the level of bad faith necessary to impose sanctions under Rule 11, the Court's inherent authority and 28 USC § 1927. Other courts in this district have imposed sanctions for similar conduct.  See, e.g. *Moyet v. Monte Carlo Auto Seat Covers, Inc.*, USDC Case No. 15-23457-cv-UNGARO, [DE 52], adopting report and recommendation of sanctions for failing to dismiss an FLSA lawsuit once counsel became aware of lack of jurisdiction.

One final note:  The lawyers in this case and the law firm well understood that Defendants could ill-afford protracted litigation: they had all of Defendants' financial records. Yet they continued to litigate for nearly nineteen months after learning that Defendants were not subject to enterprise coverage (and still continue to litigate post-judgment).  On these facts, the Court finds that the lawyers unreasonably and vexatiously multiplied Defendants' attorney's fees and costs in bad faith.  They should bear the

"financial nexus to the excess proceedings."   For these reasons, Defendants are entitled

to an award of sanctions.   Proof that this motion was served on the Attorneys and the

Law Firm twenty-one (21) days before it was filed is attached as Exhibit "H".   Defendants

include their invoice from Langbein & Langbein, P.A. to show the amount of fees they

incurred in defending this action accompanied by the declaration of Leslie W. Langbein,

Esq.  Exhibit "J"

WHEREFORE, Defendants respectfully request that the Court award them their

reasonable attorney's fees.  Defendants reserve the right to amend this application as

more fees are incurred.

MY SIGNATURE BELOW CONSTITUTES A VERIFICATION THAT THE FACTS

STATED IN THIS MOTION ARE TRUE AND CORRECT TO THE BEST OF MY

KNOWLEDGE AND BELIEF.

Respectfully Submitted,

LANGBEIN & LANGBEIN, P.A.
Counsel for the Defendants
8181 NW 154th Street, Suite 105
Miami Lakes, FL 33016
(Tel) (305) 556-3663
(Fax) (305) 556-3647
Email: langbeinpa@bellsouth.net

## CERTIFICATE OF SERVICE

I CERTIFY that a copy of the foregoing was served on the below attorneys of record on 2/13/18.   I further CERTIFY that a copy of the foregoing was filed electronically on 3/16/18 through CM/ECF and that a copy of the foregoing will be served via notification through CM/ECF on all counsel or parties of record on the attached service list:

By: /s/ Leslie W. Langbein
Leslie W. Langbein, Esq.
Fla. Bar No. 305391

SERVICE LIST

J. H. Zidell, Esq.
K. David Kelly, Esq..
J.H. ZIDELL, P.A.
300 71st Street, Suite 605
Miami Beach, FL 33141
Tel: (305) 865-6766
Fax: (305) 865-7167
Attorneys for the Plaintiff