UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.: 16-20872-JAL

| | |
|---|---|
| JESUS LAZARO COLLAR and all others similarly situated under 29 U.S.C. 216(b), Plaintiff, vs. ABALUX, INC, JUAN D CABRAL, Defendants. | ) ) ) ) ) ) ) ) ) ) |

## PLAINTIFF'S COUNSEL'S[1] MOTION TO OVERRULE AND VACATE [DE 152] WITH INCORPORATED OBJECTIONS, AND FOR STAY PENDING RULING[2]

**COMES NOW** the undersigned, and hereby files this Motion seeking the above-described relief, and in support thereof states as follows:

1. On 7/5/18, the Magistrate entered [DE 152] that sanctioned Plaintiff's Counsel and the undersigned Firm. Plaintiff objects to same and seeks the District Judge to overrule same as follow. Moreover, this matter should be stayed pending review by the Honorable District Judge Lenard to halt further accrual of attorneys' fees.

2. It is requested that the sanctions be reconsidered and vacated, as there were good faith legal grounds to continue litigating this matter beyond the date when defense Counsel filed her response to Plaintiff's motion for summary judgment.

3. In light of the Eleventh Circuit Court of Appeals "published" decision (7/17/18), sanctions are not justified as there was a clearly **no** binding precedent in this Circuit prior to the published decision on the "constructive income argument" and the "offer of judgment

---

[1] This Motion is filed on behalf to the undersigned law firm and Plaintiff's Counsel K. David Kelly, who is no longer employed by J.H. Zidell, PA. It is also the undersigned Firm's position neither Plaintiff nor any of his Counsel be sanctioned in this matter.

[2] Plaintiff has struck [DE162] so as to incorporate the Eleventh Circuit Court of Appeals' findings in the published opinion entered on 7/17/18.

argument."[3] Thus, Plaintiff's counsel's reliance on persuasive authority to advance their legal argument raised pursuant to an Eleventh Circuit case and other Circuit decisions was in good faith.  Plaintiff conceded two of the three years at the Summary Judgment stage due to insufficient evidence of the $500,000 amount threshold. Sanctions should **not** be levied for trying in good faith to argue coverage only for the year 2015 - - Defendants' own ledgers showed greater than $500,000 for this year.

4.  [DE 152] appears to largely focus on two particular points: that Plaintiff's Counsel: "(1) relied upon incorrect summaries (prepared by his law firm) of Abalux's financial records and (2) urged an incorrect legal principle concerning the cash basis method of accounting."

5.  As stated, it is requested that the sanctions be reconsidered and vacated; and the undersigned also requests all other related issues and this litigation be stayed pending resolution of the instant Motion.

6.  Plaintiff conceded 2014 and 2016 for summary judgment based on insufficient evidence to prove that the Defendant's gross sales exceeded $500,000, and limited his claim to 2015 only. The Magistrate determined that 2015 should have been conceded also at the summary judgment stage, <u>and</u> that not doing so was in bad faith and sanctionable.

7.  This finding is erroneous and must be vacated for the reasons that follow.

---

[3] Plaintiff respectfully requests the Court take Judicial Notice that Defendant had gross receipts in 2015 of $505,973.33, which when reduced by its retail sales tax of $6,255.88, resulted in annual gross sales of, at most, $499,717.45, was just shy $282.55 of $500,000 threshold requirement. When including $407.21 attributed to workers compensation, Defendant would have exceeded the monetary threshold requirement. The Eleventh Circuit declined to consider this argument as it **<u>incorrectly</u>** held that Plaintiff failed to raise same in opposing summary judgment. *See,* Plaintiff's Response to Defendants' Motion for Summary Judgment [DE77, P.12-13]; *See also,* [DE68-5]; *Centeno-Bernuy v. Becker Farms*, 564 F. Supp. 2d 166, 176 (W.D.N.Y. 2008). A motion for re-hearing on this oversight is going to be file with the Eleventh Circuite Court of appeals within the time allowed.

## <u>MEMORANDUM OF LAW</u>

**A.  <u>Standard of Review.</u>**

As stated by the District of Columbia Circuit in *Baylor*, "district courts may not "circumvent

the Federal Rules of Civil Procedure by implementing local rules or 'procedures' which do not

afford parties rights that they are afforded under the Federal Rules," we join a number of our

sister circuits in requiring that motions for attorney's fees be reviewed *de novo* if referred to a

Magistrate Judge and properly objected to. *Jackson v. Finnegan, Henderson, Farabow, Garrett*

*& Dunner*, 101 F.3d 145, 151 n.4 (D.C. Cir. 1996) (quoting *Brown v. Crawford Cty.*, 960 F.2d

1002, 1008 (11th Cir. 1992)); *see McCombs v. Meijer, Inc.*, 395 F.3d 346, 360 (6th Cir.

2005); *ClearOne Commc'ns, Inc. v. Bowers*, 509 Fed.Appx. 798, 804–05 (10th Cir.

2013); *McConnell v. ABC–Amega, Inc.*, 338 Fed.Appx. 24, 26 (2d Cir. 2009); *cf. Rajaratnam v.*

*Moyer*, 47 F.3d 922, 924 & nn.5, 8 (7th Cir. 1995) (finding that motion for attorney's fees

referred via 28 U.S.C. § 636(b)(3) required *de novo* review.  To the extent that Local Civil Rule

72.2 can be understood to suggest anything to the contrary, it is overruled."  *Baylor v. Mitchell*

*Rubenstein & Associates, P.C.*, 857 F.3d 939, 947 (D.C. Cir. 2017).

In light of *Baylor*, and Rules 72 and 54(D)-(E) of the Federal Rules of Civil Procedure,

Plaintiff's Counsel and the undersigned Firm object to the findings on page 31 *et seq.* of [DE

152], that the Magistrate may issue the subject order (as opposed to a report and

recommendation), because the sanctions order is not dispositive (in comparison to a dismissal for

example).  This Court should apply a *de novo* review (not a clearly erroneous or contrary to law

standard).  However, if this Court does not agree that a *de novo* review is applicable, the

undersigned asks the Court to nevertheless find that the Magistrate's sanctions rulings are clearly

erroneous or contrary to law.  Should this Court not overrule the Magistrate, the Eleventh Circuit

should correctly apply a *de novo* review.  Such is why *Baylor* held that "[t]he correct standard of review is *de novo*. We therefore reverse and remand to allow the trial judge to reconsider this matter in the first instance applying *de novo* review to assess the Magistrate Judge's recommendation."  *Baylor*, 857 F.3d at 943.

Also, analogously a motion *for reconsideration* may be granted upon the showing of one of three grounds: namely, "(1) an intervening change in controlling law; (2) the availability of new evidence; and (3) the need to correct clear error or manifest injustice." *Lewis v. Michaels Stores, Inc., 2007 U.S. Dist. LEXIS 82700 (M.D. Fla. Nov. 7, 2007* (citations omitted).  The undersigned objects to [DE 152], as there is a need to correct clear error and/or manifest injustice. Further, in light of the Eleventh Circuit Court of Appeals "published" decision (7/17/18), sanctions are not justified as there was a clearly **no** binding precedent in this Circuit prior to the published decision on the "constructive income argument" and the "offer of judgment argument." Thus, Plaintiff's counsel's reliance on persuasive authority to advance their legal argument raised pursuant to an Eleventh Circuit case and other Circuit decisions was in good faith.

### B. <u>Reliance upon Allegedly Incorrect Summaries</u>.

There is <u>no</u> evidence that Plaintiff's graphs/summaries were created or relied upon in bad faith.  Defendants repeatedly attacked the graphs submitted, as the undersigned Firm independently evaluated Defendants' Quickbooks Ledgers and determined the total for **2014** was $497,126.59, **2015** $505,971.14, and **2016** $466,516.57.  The undersigned Firm used Excel and also manual calculations to determine same.  The graphs were presented at the hearing with the Magistrate.  Defendants claim that Plaintiff did not offer any admissible evidence.  The graphs were not sworn documents.  However, as indicated by the Affidavit of corporate representative Michelle Marcos dated 6/2/17, Defendants actually claimed the amount *higher* for 2015 at

$508,518.69, although they then subtracted sales taxes, permit fees and other re-imbursements.[4]
*See*, [DE 58].  Plaintiff thus found there were at the least genuine issues of material fact, for
2015,  regarding the extent Defendants can subtract sales taxes, permit fees and other re-
imbursements (i.e. income attributed to workers compensation, etc.) (such is discussed further in
the section below).[5]

The undersigned Firm independently evaluated the Quickbooks Ledgers, and used diligent
efforts to analyze and cast doubt on Defendants' records.  However, the undersigned Firm had
other evidence to rely on, and did not need those summary charts for purposes of the legal theory
alleged.  The undersigned points this out, because there was absolutely no bad faith refusal to
withdraw faulty evidence (see Page 21 of the sanctions order [DE 152]).  As indicated by the
documentation filed with [DE 56], the Defendants provided invoices relevant to 2015, and it was
discovered based on such invoices, that at least <u>$16,527.41 should be added to Defendants' gross
annual income in 2015</u> (regarding sales in 2015 where payment was made by Defendants'
customers in 2016).  Plaintiff cross-referenced the invoices attached to [DE 56] (for example
invoice #9925) with the payments (check copies on the following pages bearing those same
invoice numbers).  For example, when the Court reviews invoice #9925 (dated 12/7/15), the

_____

[4]Plaintiff finds it worthwhile to point out this disparity, because as indicated by the graph filed
by Plaintiff, the $505,971.14 figure is based on the Defendants' QuickBooks, and the
$508,518.69 the Defendants bank records.  This further shows the unreliability of Defendants'
records.   Also, Marcos' 6/2/17 Affidavit is admittedly incorrect as Marcos submitted another
Affidavit on 7/7/17 that lists the 2015 total as $505,973.33 (which is slightly higher).
[5]These items are <u>not</u> automatically excluded from Defendants' gross sales under the FLSA.  The
subject order implies they are. Defendant had gross receipts in 2015 of $505,973.33, which when
reduced by its retail sales tax of $6,255.88, resulted in annual gross sales of, at most,
$499,717.45, was just shy $282.55 of $500,000 threshold requirement. When including $407.21
attributed to workers compensation, Defendant would have exceeded the monetary threshold
requirement. The Eleventh Circuit declined to consider this argument as it **<u>incorrectly</u>** held that
Plaintiff failed to raise same in opposing summary judgment. *See,* Plaintiff's Response to
Defendants' Motion for Summary Judgment [DE77, P.12-13]; *See also,* [DE68-5]; *Centeno-
Bernuy v. Becker Farms*, 564 F. Supp. 2d 166, 176 (W.D.N.Y. 2008).

check on the following page (that includes a cross-referencing stamp "9925") is dated 2/2/16. Thus, Plaintiff argued that $489 should be included in Defendants' 2015 gross annual income although the payment was made in 2016. Appellant attached numerous other such invoices/payments to [DE 56], and such totals at least $16,527.41 that Plaintiff argued should be added to Defendants' gross annual income in 2015. As set forth in [DE 56], the Affidavit of Michelle Marcos (dated 8/14/17), Paragraph 7(e), also references "redacted bank records for money received in 2016 for invoices created in December, 2015." Plaintiff attached those bank records to [DE 56], and the total in those bank records seems to reflect $24,004.34. Thus for 2015, Plaintiff argued that additional amounts should be attributed to Appellees' gross annual income. Thus, if the said amount of $505,971.14 is increased by $16,527.41 or $24,004.34, Appellees gross annual income for 2015 would reach as much as $522,498.55 or even $529,975.48. The gross annual income regarding that amount is even higher if the $508,518.69 figure from Michelle Marcos' 6/2/17 Affidavit is used: the figure for 2015 would be $525,046.10 or $532,523.03. The undersigned points this out, because there was not any bad faith refusal to withdraw faulty evidence (see Page 21 of the sanctions order [DE 152]). Counsel and the undersigned Firm object to the Magistrate's findings on this issue. Counsel did not need (nor was the Court mislead) to rely on the Charts to advance Plaintiff's theory (which is addressed separately below), but those Charts were created for due diligence purposes, and staff at the undersigned Firm spent a significant amount of time manually calculating those records in an attempt to determine accuracy. To date, nothing supports that those charts were utilized in bad faith. Defendants relied supposedly on Quickbooks, which purported to calculate numbers slightly different than those in the subject charts. And importantly, as stated, Plaintiff relied on hard evidence (i.e. Defendants' invoices and bank records), which provided the necessary factual

proof notwithstanding the charts, to advance Plaintiff's legal theory as to FLSA coverage for

2015.

C. **Pursuit of Allegedly Incorrect Legal Principle Concerning the Cash Basis Method of Accounting. The Magistrate Determined that Reliance on this Legal Theory was Sanctionable—this Finding must be Vacated.**

1. "Constructive Income" Theory.
"This Court also agrees that the accrual method appears to be preferable as a measure of an

employer's actual annual sales or business done. *See also Centeno–Bernuy v. Becker Farms,* [6] 564

F.Supp.2d 166 (W.D.N.Y.2008) (adding a late-cashed check payment to prior year's sales for

FLSA jurisdictional threshold purposes where it was conceded that payment was for prior year's

sale but was recorded in subsequent year when check was cashed)."  *Arilus v. Joseph A.*

*DiEmmanuele, Jr., Inc.*, 895 F. Supp. 2d 1257, 1265 (S.D. Fla. 2012), *aff'd sub nom. Arilus v.*

*Diemmanuele*, 522 Fed. Appx. 881 (11th Cir. 2013).   Consequently, Plaintiff argued that in this

Circuit it is proper, in determining the gross annual income threshold concerning FLSA

enterprise coverage, to include payments from a subsequent year, when the business was done in

the year prior. *See* 29 CFR 779.259, regarding "business done".  [DE 58].

In light of the Eleventh Circuit Court of Appeals "published" decision (7/17/18), sanctions

are not justified for advancing these theories. There was clearly **no** binding precedent in this

Circuit prior to the published decision on the "constructive income argument." Thus, Plaintiff's

counsel's reliance on persuasive authority to advance their legal argument raised pursuant to an

Eleventh Circuit case and other Circuit decisions was in good faith.

In the case at bar, this Court focused on the "preferable" language in its order, [DE 97], at

P11, and found no authority that such method is required.  [DE 97], at P1, citing *Arilus.*

---

[6] Plaintiff's reliance on this case to advance the constructive income theory was not in bad faith
as no binding authority existed in the Eleventh Circuit.

However, in *Arilus* "The court also recognized that because the <u>employers used a cash basis</u> of accounting, some of the sales made or business done in 2006 might actually be reported on the 2007 tax returns. The court ultimately concluded, **however, that the plaintiffs did not present any compelling evidence showing that enough of the employers' 2007 receipts related to business done in 2006** such that the total annual sales or business done in 2006 would have exceeded $500,000." *Arilus v. Diemmanuele*, 522 Fed. Appx. 881, 884 (11th Cir. 2013)(emphasis added).[7]  In the case at bar, Defendants continue to maintain that they used the cash basis method.  However, as set forth above, *Arilus* stated that the employer in that case (just like Abalux alleges) used a cash basis of accounting, and the "compelling evidence" language in *Arilus* is very important in analyzing the case at bar, because <u>there is</u> evidence in this case (unlike in *Arilus)* showing that Defendants' receipts from 2016, when attributed to sales made in 2015, would reflect total annual sales or business done in 2015 that exceed $500,000.  *See*, *Arilus v. Diemmanuele*, 522 Fed. Appx. at 884.  Thus, Counsel and the undersigned Firm object to the Magistrate's findings that reliance on *Arilus* is unsupportable and sanctionable.  For example, under a Rule 11 analysis Plaintiff's theory under *Arilus* did not present an argument not "warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law".  *Ramos v. S. Florida Express Bankserv, Inc*., 08-23382-CIV, 2009 WL 10667774, at *3 (S.D. Fla. Dec. 9, 2009).

As indicated by the documentation filed with the Discovery Appeal [DE 56], the Defendants provided invoices relevant to 2015, and it was discovered based on such invoices, that at least

---

[7]Plaintiff's reliance on this "constructive income" theory was believed to be supported by this Eleventh Circuit opinion.  If *Arilus*, which also involved utilization of cash-basis accounting, cannot be read to allow an employee to seek an alternative method of meeting the $500,000 threshold, then why did it bother to address constructive income and acknowledge that the plaintiff in that case failed to present the requisite "compelling evidence"?  *Id*. at 884.

$16,527.41 should be added to Defendants' gross annual income in 2015 (regarding sales in 2015 where payment was made by Defendants' customers in 2016). Plaintiff also attached the bank records to [DE 56], and the total in those bank records seems to reflect $24,004.34. The gross annual income regarding that amount is even higher if the $508,518.69 figure from Michelle Marcos' 6/2/17 Affidavit is used: the figure for 2015 would be $525,046.10 or $532,523.03. Such calculations have nothing to do with the disputed graphs (which were primarily created to manually check the accuracy of Defendants' records), but rather incorporate the figure from Michelle Marcos' 6/2/17 Affidavit. There also does not appear to be conclusive proof that the graphs were incorrect; rather Defendants submitted an Affidavit alleging the Quickbooks system was correct. For example, the subject order [DE 152] at Page 40 states that "[t]he motion further noted that Defendants' response to the Plaintiff's partial summary judgment motion included a declaration showing that Plaintiff's counsel's charts "were based on transposed numbers and faulty calculations" and case law which held that Plaintiff's counsel's "reliance on the $508,518.69 was both legally and factually unjustified." However, the undersigned does not believe, based on the language of the subject order, that the Magistrate himself did a manual calculation to check if the Quickbooks records were accurate—but rather relied on Defendants' Affidavit[8] submitted by Defendants in response to Plaintiff's motion for summary judgment.

Regarding legal justification, as stated, the Eleventh Circuit in *Arilus* noted "**that the plaintiffs did not present any compelling evidence showing that enough of the employers'**

---

[8]Defendants filed numerous inaccurate Affidavits throughout the discovery phase of this case. As explained in Plaintiff's summary judgment response [DE 77], Defendants' TAB D, which contains Ms. Marcos' multiple, ever-evolving affidavits, did not appear to even differentiate between retail and wholesale sales. In spite of this, the Magistrate accepted Defendants' summary judgment response affidavit to sanction Plaintiff's Counsel and the undersigned Firm.

**2007 receipts related to business done in 2006** such that the total annual sales or business done in 2006 would have exceeded $500,000." *Arilus v. Diemmanuele*, 522 Fed. Appx. 881, 884 (11th Cir. 2013). Therefore, Plaintiff had basis to raise his arguments under Eleventh Circuit case law, because, as stated, <u>there is</u> evidence in this case (unlike in *Arilus)* showing that Defendants' receipts from 2016, when attributed to sales made in 2015, would reflect total annual sales or business done in 2015 that exceed $500,000. *See*, *Arilus v. Diemmanuele*, 522 Fed. Appx. at 884. It is also notable that the Eleventh circuit used said "compelling evidence" language, and was obviously aware of Section 779.266, because the district court below in *Arilus* addressed that section in noting that "[a]s an alternative, the annual gross volume of sales can be determined by examining the employer's earnings during the twelve months preceding the beginning of a fiscal quarter (the "rolling quarter" method, as described in 29 C.F.R. 779.266)." *Arilus v. Joseph A. DiEmmanuele, Jr., Inc*., 895 F. Supp. 2d 1257, 1260 (S.D. Fla. 2012),[9] *aff'd sub nom. Arilus v. Diemmanuele*, 522 Fed. Appx. 881 (11th Cir. 2013). 29 CFR 779.226 was published in the federal register before it was cited in *Arilus*. *See*, 35 Fed.Reg. 5856 (1970).

On this issue concerning the accounting method, the Magistrate's sanction order, *see* [DE 152] at 56, found it incorrect and sanctionable to argue the accrual method was "required". However, the undersigned asks the Court to reconsider sanctions on this issue, because there was a sound legal basis under *Arilus* to seek application of the accrual method, because there was "compelling evidence" showing that enough of Defendants 2016 receipts related to business done in 2015 such that the total annual sales or business done in 2015 would have exceeded $500,000. *See*, *Arilus*, 522 Fed. Appx. at 884. Defendant had gross receipts in 2015 of $505,973.33, which when reduced by its retail sales tax of $6,255.88, resulted in annual gross

---

[9]The Magistrate's findings, that reliance on this case law was frivolous and sanctionable, are clearly erroneous and/or contrary to law.

sales of, at most, $499,717.45, was just shy $282.55 of $500,000 threshold requirement. When

including $407.21 attributed to workers compensation,[10] Defendant would have exceeded the

monetary threshold requirement. The Eleventh Circuit declined to consider this argument as it

**incorrectly** held[11] that Plaintiff failed to raise same in opposing summary judgment. *See,*

Plaintiff's Response to Defendants' Motion for Summary Judgment [DE77, P.12-13]; *See also,*

[DE68-5]; *Centeno-Bernuy v. Becker Farms*, 564 F. Supp. 2d 166, 176 (W.D.N.Y. 2008). Even

if the Court disagrees with such argument, sanctions are not justified as there was a good faith

technical legal argument raised pursuant to an Eleventh Circuit case.[12]

That "compelling evidence" language from *Arilus* is important concerning whether the

undersigned Firm raised a good faith legal theory, because this Court in its summary judgment

ruling, [DE 97] at 11, found that "in *Arilus*, the Eleventh Circuit affirmed the entry of summary

judgment in favor of an employer that used a cash basis method of accounting."  Rejecting

Plaintiff's legal theory and granting summary judgment in Defendants' favor, is significantly

different than finding sanctionable and bad faith litigation conduct, and it is important that this

Court consider that the Eleventh Circuit in *Arilus* (notwithstanding that the employer in *Arilus*

like Defendant Abalux used a cash basis as was found by Judge Lenard in [DE 97]) noted "**that**

**the plaintiffs did not present any compelling evidence showing that enough of the**

**employers' 2007 receipts related to business done in 2006** such that the total annual sales or

business done in 2006 would have exceeded $500,000."  *Arilus v. Diemmanuele*, 522 Fed. Appx.

881, 884 (11th Cir. 2013).  As stated in detail above, the undersigned Firm did have such

---

[10] A Motion for Re-Hearing will be filed on this oversight.

[11] *Centeno-Bernuy v. Becker Farms*, 564 F. Supp. 2d 166, 176 (W.D.N.Y. 2008) specifically addresses the inclusion of these types of costs in Defendants annual income for FLSA purposes.

[12] Or a nonfrivolous argument for extending existing law.  *See, Ramos v. S. Florida Express Bankserv, Inc*., 08-23382-CIV, 2009 WL 10667774, at *3 (S.D. Fla. Dec. 9, 2009).

"compelling evidence", and, at the very least, this Court should find Plaintiff's Counsel did not

in bad faith argue that *Arilus* permitted the alternative accrual theory to be raised if "compelling

evidence" is present.

2. <u>Wholesale Versus Retail Considerations</u>.
   In addition, aside from the accrual basis issue, with respect to 29 U.S.C.A. §

203(s)(1)(ii)(emphasis added), Defendants cannot exclude sales tax from their gross annual

income, unless it is on the "retail" level.[13]  The Magistrate appears to imply that such sales tax is

automatically excluded, which is erroneous.  Michelle Marcos admitted that she could not

answer the "percentage" of "wholesale versus retail" sales.  Marcos Deposition, P115, L3-9;

P116.  [DE 58].  With respect to the disputed sales tax, Marcos testified "I do not at this time"

when asked if she knew whether wholesale clients pay the majority of those sales taxes".

Marcos Deposition, P133, L16-20, P134-136.  However, Marcos stated that she could do it and

stated "yes" when asked if it would be easy.  Marcos Deposition, P136. However, Defendants

have not done so.  [DE 58].  An example of Defendants lack of clarity, see Michelle Marcos'

Affidavit [DE 68-5], dated 6/2/17, wherein Para. 9 she claimed Abalux's gross volume of sales

for 2015 was $483,806.81 (however to arrive at that figure she deducted various unjustified

amounts).  Defendants in [DE 68-5] did not distinguish between wholesale and retail sales, and

thus it is not clear how much of that $10,258.34[14] is wholesale to be included in the gross annual

---

[13]Wholesale tax cannot be excluded.  *See*, 29 U.S.C.A. § 203(s)(1)(ii).  If these exclusions do not apply, then there was FLSA coverage for 2015 as Defendants' own evidence showed greater than $500,000 for 2015, when also factoring in reimbursements addressed separately herein. When including $407.21 attributed to workers compensation, Defendant would have exceeded the monetary threshold requirement. *See,* Plaintiff's Response to Defendants' Motion for Summary Judgment [DE77, P.12-13]; *See also,* [DE68-5]; *Centeno-Bernuy v. Becker Farms*, 564 F. Supp. 2d 166, 176 (W.D.N.Y. 2008). *See* the following footnote herein regarding same. This was a separate basis for trying to prove coverage for 2015.
[14]This amount, when factored in with the reimbursements discussed in the section below, makes the difference in FLSA coverage for 2015.  Michelle Marcos' Affidavit [DE 68-5], dated 6/2/17,

income.  [DE 68-5] also attributes $407.21 to workers compensation, but *Centeno-Bernuy*[15]

*supra* includes such as income.  Counsel and the undersigned Firm object to the Magistrate's

ruling which did not adequately take into consideration the wholesale versus retail component,

when deciding that Counsel's and the undersigned Firm's conduct was frivolous and vexatious.

   203(s)(1)(ii) expressly differentiates retail and wholesale regarding excise taxes, but not other

exclusivities.  Therefore, Plaintiff maintains that there is no requirement to distinguish between

Defendants retail and wholesale customers regarding reimbursement for materials and permit

fees (unlike excise taxes).  Also, as stated, Defendants have not distinguished between their retail

and wholesale customers, and have thus not justified reduction of their gross annual income in

relation to excise taxes.  *See,* [DE 58].  Even if the Court found Plaintiff's Counsel's arguments

to be incorrect, such is not bad faith or conduct warranting sanctions.

   3.   Alleged Reimbursements that Need to be Included in Gross Annual Income.
   Also, Defendants tried to further reduce their gross annual income for 2015 by amounts they

were reimbursed by their clients for materials and permit fees.  Such materials and permit fees

were, without question, related to the business that Defendants' enterprise conducted.  In the

*Centeno-Bernuy* case, the Western District of New York found that "[t]he Workers'

Compensation refunds is income to the enterprise, presumably generated as a result of a

---

in Para. 9, claimed Abalux's gross volume of sales for 2015 was $483,806.81 and if $10,258.34
is added to such amount, such totals $494,065.15.   As indicated by Marcos' transcript excerpt,
Defendants have a "product that's called Permit Processing[,]"  that Defendants sell to both
wholesale and retail customers.  The price can vary from $100 to $900.  Marcos Deposition
7/20/17, P209, L8-14; P210.  [R, 1-58].  In fact, Marcos admitted that such permit "product"
includes a "profit" for Defendant Abalux.  Such profits concern all permits that are processed for
the years 2014, 2015 and 2016.  Marcos Deposition 7/20/17, P211-12.  Michell Marcos'
Affidavit [DE 68-5], dated 6/2/17, also states that in 2015 $6,597.13 was for permit fee
reimbursements and $4,453 for pass through reimbursements.  If those reimbursements are
tacked on to the said amount of $494,065.15, Defendant's gross annual income well exceeds the
$500,000 threshold—a total of $505,115.28.  Plaintiff Counsel's and the undersigned Firm's
legal arguments concerning the annual income calculation for 2015 were not made in bad faith.
[15]Reliance on this legal authority was not frivolous.

reassessment of the business' risk of injury or utilization of insurance. All of the income generated is deposited into the same bank account, tracked on the same spreadsheet and accounted for on a single income statement." *Centeno-Bernuy v. Becker Farms*, 564 F. Supp. 2d 166, 176 (W.D.N.Y. 2008). Thus, it appears the amounts Defendants were reimbursed for by their clients for materials and permit fees[16] should be included in Defendants' gross annual income, as they are analogous to the refunds addressed in *Centeno-Bernuy*. When including $407.21 attributed to workers compensation, Defendant would have exceeded the monetary threshold requirement. The Eleventh Circuit declined to consider this argument as it **incorrectly**[17] held that Plaintiff failed to raise same in opposing summary judgment. *See,* Plaintiff's Response to Defendants' Motion for Summary Judgment [DE77, P.12-13]; *See also,* [DE68-5]; *Centeno-Bernuy v. Becker Farms*, 564 F. Supp. 2d 166, 176 (W.D.N.Y. 2008). *See* the following footnote herein regarding same, including with respect to reimbursements. This was a separate basis for trying to prove coverage for 2015.

Moreover, as stated, Section 203(s)(1)(ii) expressly differentiates retail and wholesale regarding excise taxes, but not other exclusivities. Therefore, Plaintiff maintained that there is no requirement to distinguish between Defendants retail and wholesale customers regarding reimbursement for materials and permit fees (unlike excess taxes)—such reimbursement for materials and permit fees should simply be included in Defendants gross annual income,

---

[16]As indicated by Marcos' transcript excerpt, Defendants have a "product that's called Permit Processing[,]" that Defendants sell to both wholesale and retail customers. The price can vary from $100 to $900. Marcos Deposition 7/20/17, P209, L8-14; P210. [R, 1-58]. In fact, Marcos admitted that such permit "product" includes a "profit" for Defendant Abalux. Such profits concern all permits that are processed for the years 2014, 2015 and 2016. Marcos Deposition 7/20/17, P211-12. Thus, Defendants charge well in excess of the permit fee to process and obtain their customers' permits. See, [DE 58].

[17] A Motion for Rehearing on this oversight is planned to be timely filed with the Eleventh Circuit.

regardless of whether they concerned retail or wholesale customers.  Even if the Court determined Plaintiff's Counsel's arguments to be incorrect, such is not bad faith or conduct warranting sanctions.

### D.  <u>OJ Acceptance was not done in Bad Faith</u> .

In its Order [DE 101] the Court cited various cases, but Plaintiff found no on-point case law in this district (that harmonizes with Eleventh Circuit case law) leading to the conclusion that this Court should find Plaintiff's Acceptance unenforceable, and that the respective settlement agreement should be submitted for approval.  As such, Plaintiff urged the Court to follow the reasoning of this Circuit's sister circuit in *Perkins v. US West Communications*, which held that "the plain language of Rule 68 mandates that an offer of judgment remain[s] valid and open for acceptance for the full…period outlined in the Rule despite an intervening grant of summary judgment by the district court." 13 F.3d 336, 339 (8th Cir. 1998). The Southern District of Florida has found that "[a]s a result, an intervening event that occurs before the acceptance period expires, **like a negative summary judgment order** (*Perkins v. U.S. West Comm.,* 138 F.3d 336 (8th Cir.1998)) or a plaintiff's counteroffer that would under traditional contract principles allow for revocation (*Pope,* 92 F.Supp.2d at 1328), do not allow a defendant/offeror to rescind the offer." *Pineda v. Am. Plastics Techs., Inc.*, 12-21145-CIV, 2014 WL 1946686, at \*7 (S.D. Fla. May 15, 2014)(emphasis added*). [18]*

The Eleventh Circuit has found that "the majority recognizes that pursuant to Federal Rule of Civil Procedure 68, judgment should have been entered by the clerk immediately upon filing of the notice accepting the offer of judgment. A Rule 68 offer of judgment and acceptance is self-executing. *See Perkins v. U.S. W. Commc'ns,* 138 F.3d 336, 338 (8th Cir.1998) ("Rule 68 leaves

---

[18] Defendants' Offer of Judgment did **not** make acceptance conditional on whether Summary Judgment had been entered prior to the acceptance date.

no discretion in the district court to do anything other than enter judgment once an offer of judgment has been accepted."); *Mallory v. Eyrich,* 922 F.2d 1273, 1279 (6th Cir.1991) ("By directing that the clerk *shall* enter judgment after proof of offer and acceptance have been filed, the explicit language of the rule signifies that the district court possesses no discretion to alter or modify the parties' agreement.").   *Lewis v. Haskell Slaughter Young & Rediker, LLC*, 582 Fed. Appx. 810, 815 (11th Cir. 2014).

With the very specific issue at hand, there is a split in the jurisdictions.  For example see *Perkins v. U.S. West Comm.*, 138 F.3d 336 (8th Cir. 1998) in comparison to *Day v. The Krystal Co.,* 241 F.R.D. 47 (E.D. Tenn. 2007).  In the case at bar, the holding in *Perkins* supports Plaintiff, whereas *Day* takes the contrary position.  While the Eleventh Circuit held the *Perkins* is unpersuasive, the Panel did discuss a split in authority on this issue and, by no stretch of the imagination, is the above argument sanctionable, and the undersigned Firm and Counsel object to the Magistrate's findings that the acceptance of the offer of judgment was sanctionable.

**E.  Biased Comments by the Magistrate and Pre-suit Considerations.**

In [DE 152], the Magistrate exhibited bias and a lack of impartiality towards the undersigned Firm (and apparently against the entire plaintiffs' bar that files FLSA cases in the Southern District).  On page 62 of [DE 152], the Magistrate made reference to "all of the other firms" and their "business model", and also invited opposing counsel to "reference this Order" in "future sanctions motions".  These comments are very disturbing to say the least, as the Magistrate appears to encourage future sanctions motions against firms that represent FLSA plaintiffs, even with respect to actions that have not yet even been filed.  The Magistrate's encouragement of future sanctions motions (apparently against all FLSA plaintiff firms in this district), should be found as an overt attempt to chill advocacy of workers' rights in this District.  Under 28 U.S.C.

Section 455(a)(emphasis added), a magistrate **"shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned."**

It is also of great concern that the Magistrate, on page 61 of [DE 152], makes reference (with respect to pre-suit issues) to unnamed attorneys that worked (or who worked) for the undersigned Firm, and from unnamed defense attorneys. The undersigned Firm cannot defend itself[19] regarding such statements by the Magistrate, who is criticizing the undersigned Firm based on what other unidentified attorneys have allegedly said. Such is not the type of "evidence" this Court should rely on, in implementing harsh sanctions against attorneys. If the Magistrate had formed these opinions about the undersigned Firm, then he certainly should have recused himself from deciding the subject sanctions motion!! Under 28 U.S.C. Section 455(a),(b)(1)(emphasis added), a magistrate "**shall** also disqualify himself" "[w]here he has a personal bias or prejudice concerning a party…." As found by the Ninth Circuit: "Finally, we instruct the Chief Judge of the Central District of California to reassign this case to different district judge on remand. While nothing in the record suggests that the district judge exhibited a personal bias that would require recusal, *United Nat'l Ins. Co. v. R & D Latex Corp.,* 242 F.3d 1102, 1118 (9th Cir.2001), reassignment is warranted because the judge may "have substantial difficulty in putting out of his … mind previously expressed views or findings determined to be erroneous," making "reassignment … advisable to preserve the appearance of justice." *Trudeau v. Direct Mktg. Concepts, Inc.*, 90 Fed. Appx. 486, 488 (9th Cir. 2003). In the case at bar however, Magistrate Goodman expressly demonstrated in [DE 152] bias and a lack of judicial impartiality, not only against the undersigned Firm, but also apparently towards the entire plaintiff's bar that represents workers in FLSA cases in this District.

---

[19]Who? What? When? Where? Why would the Magistrate have engaged in such conversations with others at all?

In the Eleventh Circuit: "[W]here there is no indication of actual bias[,]"[20] we consider at least three factors to determine whether to reassign a case: "(1) whether the original judge would have difficulty putting his previous views and findings aside; (2) whether assignment is appropriate to preserve the appearance of justice; (3) whether reassignment would entail waste and duplication out of proportion to gains realized from reassignment." *United States v. Gupta*, 572 F.3d 878, 891 (11th Cir. 2009). In the case at bar, Magistrate Goodman should have recused himself under 28 U.S.C. Section 455(a),(b)(1), considering his comments referenced above.

Also, with respect pre-suit issues, the necessary information regarding FLSA coverage (particularly taxes concerning the $500,000 threshold at issue in the case at bar) would be in the possession of the defendant-employers. *Daniel v. Pizza Zone Italian Grill & Sports Bar, Inc*., 2008 U.S. Dist. LEXIS 23007, *6 (M.D. Fla. 2008). In *Sahyers v. Prugh, Holliday & Karatinos, P.L.*, 603 F.3d 888, 890 (11th Cir. 2010)(emphasis added), the Eleventh Circuit stated that "[t]he panel created no procedural rule requiring pre-suit notice in FLSA cases: even notices from suing lawyers to lawyers to be sued in their individual capacity. Nor do I understand the District Court to have created such a hard-edged rule even for lawyers suing lawyers, although the absence of any notice was obviously an important consideration in the fee determination...." *Id.* That said, the Magistrate appears to ignore *Sahyers*, and in the case at bar, the main issue concerns Defendants' gross annual income which required extensive discovery.

**F.  Conclusion.**

Even though this Court chose to reject the aforesaid FLSA coverage arguments in granting summary judgment in Defendants' favor, Plaintiff raised good faith arguments that should not be

---

[20]In the subject order there does appear to indicate actual bias as per what the Magistrate claims to have learned about the undersigned Firm's "business model", from several undisclosed individuals prior to entering the subject order.

penalized with sanctions.  Reliance on the Eleventh Circuit decision in *Arilus* discussed above, the said "wholesale versus retail" and reimbursement factors demonstrate good faith bases. Moreover, as stated, the Magistrate has exhibited biased hostility towards the undersigned Firm (and apparently all firms in this District that represent FLSA plaintiffs), and the undersigned has serious concerns that such factored into the Magistrate's ruling in [DE 152].   Also, as stated the Magistrate has ignored cases such as *Baylor, supra*, and is attempting to deprive the undersigned Firm and Counsel of a *de novo* review by the District Judge.  On a final note, Plaintiff only moved for summary judgment for the year 2015, and did not oppose the other years as the Court denied Plaintiff's Discovery Appeal [R, 1-56].

    **WHEREFORE** THE UNDERSIGNED REQUESTS THAT THE SANCTIONS BE VACATED, AND ALSO THAT ALL OTHER RELATED ISSUES AND THIS LITIGATION BE STAYED PENDING RESOLUTION OF THE INSTANT MOTION AND/OR THE PENDING APPEAL.

<u>**CERTIFICATE OF CONFERRAL**</u>

    Defendant Leslie Langbein, Esq. sent an email indicating she opposes the Motion.


                    Respectfully submitted,

                    J. H. ZIDELL, P.A.
                    ATTORNEYS FOR PLAINTIFF
                    300-71ST STREET, SUITE 605
                    MIAMI BEACH, FLORIDA 33141
                    305-865-6766
                    305-865-7167

                    By:_s/ J.H. Zidell, Esq. ___
                        J.H. Zidell, Esquire
                        Florida Bar No.: 10121

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY THAT A TRUE AND CORRECT COPY OF THE FOREGOING
WAS PROVIDED VIA CM/ECF ON 7/17/18 TO:**

**ALL CM/ECF RECIPIENTS**

**LESLIE W. LANGBEIN, ESQ.
LANGBEIN & LANGBEIN
ATTORNEYS FOR DEFENDANT
8181 NW 154 STREET
SUITE 105
MIAMI LAKES, FLORIDA 33016**

**BY:_____/s/ J.H. Zidell_____
J.H. ZIDELL, ESQ.**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.: 16-20872-JAL

| | |
|---|---|
| JESUS LAZARO COLLAR and all others<br>similarly situated under 29 U.S.C. 216(b),<br>Plaintiff,<br>vs.<br><br>ABALUX, INC,<br>JUAN D CABRAL,<br>Defendants.<br>_____ | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**ORDER GRANTING PLAINTIFF'S COUNSEL'S MOTION TO OVERRULE AND
VACATE [DE 152] WITH INCORPORATED OBJECTIONS, AND FOR STAY
PENDING RULING**

This cause, having come before the Court on the Plaintiffs' above-described motion, and the

Court being duly advised in the premises, it is ORDERED and ADJUDGED that said motion is

granted and therefore:

Upon review of the Magistrate's Order [DE 152], the Court rules as follows:

_____.

DONE AND ORDERED in chambers in Miami-Dade, Florida, on this _____ day of

_____, 2018.

_____
JOAN A. LENARD
UNITED STATES DISTRICT JUDGE

Copies to: Counsel of Record