UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami                    Division
Case No. 16-cv-20872-LENARD/GOODMAN

JESUS LAZARO COLLAR,

 Plaintiff,
v.

ABALUX INC., and
JUAN D. CABRAL,

 Defendants         .
_____/

### DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION TO OVERRULE [DE 152] And DEFENDANTS' REQUEST FOR ADDITIONAL SANCTIONS

Defendants, ABALUX, INC. ("ABALUX") and JUAN D. CABRAL ("CABRAL") (together referred to as "Defendants") through undersigned counsel, and pursuant to Rule 4(a)(1) of the Court's Magistrate Judge Rules, respond to J.H. Zidell, P.A. and K. David Kelly's [1] Motion to Overrule [DE 152] ("the Motion") and additionally request a supplemental award of sanctions. As grounds for these positions, Defendants state:

### Scope of Review

This Court referred Defendants' Motion for Sanctions ("Sanctions Motion") to the Magistrate Judge. [DE 125]. The referral did not request a report and recommendation; it gave the Magistrate Judge complete authority to decide the Sanctions Motion. Nevertheless, Rule 4(a) of the Local Magistrate Judge Rules provides that a party may

---

[1] Both J.H. Zidell, P.A. and Mr. Kelly will be referred to collectively in this response as "Plaintiff's Counsel."

appeal a Magistrate Judge's order determining any non-dispositive pre-trial motion under Rule 1(c). [DE 152] ("the Order") squarely fits within Local Rule 1(c) of the Magistrate Rules because a trial never was held and the sanctions awarded did not include a dismissal with prejudice of the case. Thus, it is of no consequence whether the Magistrate Judge had full authority to issue the Order or merely a report and recommendation because the standards of review are nearly identical.

A party that appeals a Magistrate Judge's order on a non-dispositive matter is not entitled to a de novo review. Setai Hotel Acquisition, LLC v. MiamiBeach Luxury Rentals, Inc., 2017 U.S. Dist. LEXIS 121143 (S.D. Fla. Aug. 2, 2017). A district court may overrule a magistrate judge's ruling on a non-dispositive matter only "where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A) (2006). And, "in the absence of a legal error, a district court may reverse only if there was an 'abuse of discretion' by the magistrate judge." Wausau Underwriters Ins. Co. v. Danfoss, LLC, 310 F.R.D. 689, 690 (S.D. Fla. 2015).

Here, the Motion simply re-argues the grounds of their Partial Summary Judgment ("PSJ") and appeal to the Eleventh Circuit. Neither court found merit to their argument that accrual accounting was mandatory, especially because DOL regulations expressly permit an employer to choose its method of accounting and the *Arilus* decisions (which Plaintiff's Counsel attempted to contort) upheld 29 CFR 779.266. Neither court accepted Plaintiff's Counsel's error-plagued charts and graphs (referred to as "the charts") as "evidence" supporting the PSJ or defeating Defendants' Motion for Summary Judgment ("SJ"). Moreover, Plaintiff's Counsel wholly has failed to explain why the Order is clearly erroneous, contrary to law and the sanctions levied are an abuse of discretion.

<u>The Magistrate's Bases for Sanctions</u>

The Magistrate Judge imposed sanctions on Plaintiff's Counsel for the following acts and omissions: 1) their "stubborn refusal to advise the Court that the charts and graphs were factually incorrect" [see, Order at page 53]; and 2) their steadfast refusal to retract from an "incorrect legal theory" and insistence that "the accrual method must be used" [Id., at page 54]. The Magistrate considered a third ground -- Plaintiff's Counsel's inappropriate attempt to accept an offer of judgment after it was extinguished by the Court's entry of a final judgment in Defendants' favor-- but determined it was not necessary to decide that issue because the earlier occurring misconduct caused Defendants' later incurred fees and costs. [*Id*, at page 56]. Each basis for appeal is discussed separately.

I.  <u>Refusal to Withdraw Factually Incorrect Charts and Graphs</u>.

Plaintiff's Counsel argues that the Magistrate Judge's award of sanctions is erroneous and an abuse of discretion because there was no showing (or finding) of bad faith concerning the manner in which the charts were created. This argument misses the point. It was not the "factual incorrectness" of the charts that warranted sanctions; sanctions were imposed because Plaintiff's Counsel was informed [2] the charts were flawed yet knowingly continued to urge the Court to accept them as evidence of

---

[2]  Ms. Marcos' 9/1/17 declaration attested that the charts contained transposed numbers and incorrect addition. It was tendered with a supplemental discovery response producing ABALUX's amended 2015 federal corporate tax return and its amended 2015 DR-15's. The declaration was not filed with the Court at that time. For ease of reference the 9/1/17 declaration is attached to this response. Ms. Marcos's 914/17 declaration filed with Defendants' Motion for Summary Judgment, likewise, denoted the errors.

ABALUX's enterprise coverage in support of its PSJ ([DE 58] filed on 8/23/17) and in defense of Defendants SJ.[3].

Plaintiff's Counsel *now* urge the Court to believe that the charts were simply work product and never constituted *evidence* submitted to support [DE 58] and for this reason, they never intended the Court to rely on them.[4] If this were the case, then:

- Why were the charts referred to repeatedly in the PSJ as well as included in their opposition [DE 77] to Defendants' SJ [DE 68]?
- Why did Plaintiff's Counsel simply not withdraw them after becoming aware of their inaccuracy?

Plaintiff's Counsel's failure to explain these points shows the fallacy of their claim. Unquestionably, the charts were *material* to deciding the parties' cross-motions for summary judgment and their purpose was clear: to convince the Court that ABALUX's Quickbooks registers and bank statements were unreliable and the Court instead should rely on their calculation of ABALUX's annual sales volume for 2015. Plaintiff's Counsel intentionally concealed the chart's inaccuracies to achieve that end.[5]

If, as Plaintiff's Counsel's now argue, the charts were immaterial, then essentially they **admit** that but for their mandatory accrual accounting theory (which itself had no

---

[3] The charts also were used to appeal the Magistrate Judge's report and recommendation on discovery issues. See [DE 56].

[4] Plaintiff's Counsel *now* claim they relied solely on proof of ABALUX's 2015 gross *revenue* (the wrong standard since the qualifier is annual gross volume of *sales*) and its accrual theory (i.e., the other **sanctionable** conduct) to support [DE 58].

[5] In the appeal, Plaintiff's Counsel has attempted to conflate the factual incorrectness of the charts with their argument about mandatory actual accounting.

basis in law) they never had any facts *on which to base contin ued litigation on or after 8/18/17*. Instead of proving that t he Order is clearly erroneous , contrary to law or an abuse of discretion, Plaintiff's Counsel's argument only demonstrates **more clearly** why sanctions are warranted.

II.     The Incorrect Legal Theory

Plaintiff's Counsel argue t hat the Magistrate Judge's find ing that they clung to an "incorrect legal theory" is clearly erroneous because there was no binding precedent prior to the Eleventh Circ uit's 7/17/18 opinion holding that accrual accounting was not mandatory. This assertion is ludicrous.

29 CFR 779.266, which allows a business to choose its method of accounting, has been in effect **since at least the early 1970's**. It is a chapter and verse in the "bible" of FLSA regulations upon which employment law practitioner s depend in interpreting and applying the FLSA. 29 CFR 779.266 was, and still is, *binding precedent* that pre-existed the Eleventh Circuit's 7/17/18 decision.

That Plaintiff's Counsel was long fam iliar with 29 CFR 779.266 be fore 9/15/17 is shown by the following. Plaintiff's Counsel (both Mr. Kelly and Mr. Zidell) relied on 29 CFR 779.266(b) in *Flores v. Nuvoc, Inc.*, 610 F. Supp. 2d 1349 (S.D. Fla. 2008) **ten years earlier.** Magistrate Judge Goodman's opinion in *Mendoza v. Joint Rack & Pinion Rebuilding , Inc*., 101 F. Supp. 3rd 1282 (S.D. Fla. 2015), a case **brought by Plaintiff's Counsel**, discussed 29 CFR 779.266.

Furthermore, Mr. Zidell referenced the "rolling quart er" method of determi ning gross annual volume of sales at the 8/3/17 discovery hearing, showing he knew about 29 CFR 775.266 before he appeared at the hearing. [Transcript, p. 40:8-11]. The "rolling

quarter" method *is described in the very same paragraph* of 29 CFR 779.266 that discusses accounting methods. See 29 CFR 779.255(b). [6]

Plaintiff's Counsel's argument about lack of precedent also ignores that the Eleventh Circuit's opinion in *Arilus v. Diemmanuele,* 522 F. Appx.881 (11th Cir. 2013) affirmed a district court's decision that cited to *Bridewell v. Cincinnati Reds*, 155 F. 3d 828 (6th Cir. 1998). [7] While the 6th Circuit opined in *Bridewell* that an accrual method of accounting would better reflect the ball club's income, it recognized that the 29 U.S.C.§213(a)(3)(b) did not require **any particular method of accounting**. " If Congress had wanted the operation of §213(a)(3)(B) to hinge upon the method of accounting used by an establishment or on the income accruing to that establishment, then it should have chosen appropriate statutory language." The Eleventh Circuit implicitly adopted the reasoning of this Court when it affirmed the final judgment entered in Defendants' favor. [8] Plaintiff's Counsel, therefore, displays an equal lack of candor to the Court in arguing no precedent existed in this circuit before the Eleventh Circuit's 7/17/18.[9]

Nor is there any merit to Plaintiff's Counsel's argument that sanctions are unwarranted because they simply were attempting to "extend, modify, reverse existing law." First, they cite *no judicial decision* they were seeking to change. Second, the

---

[6] While Defendants did not appeal the Order, they respectfully disagree with the Magistrate Judge's determination that sanctions should be awarded only from September 15, 2017 forward when it is clear Plaintiff's Counsel long has been aware of the regulation.

[8] Moreover, the Fifth Circuit Court of Appeal cited 29 CFR 779.266 in its opinion in *Usery v. Associated Drugs, Inc.*, 538 F. 2d 1191 (5th Cir. 1976). That case is binding on the 11th Circuit under *Bonner v. Pritchard*, 661 F. 2d 1206 (11th Cir. 1981).

[9] Plaintiff's Counsel also continue to misuse the term "constructive income" -- a concept related to cash basis accounting-- to mean accrual accounting. The passage in *Arilus* to which they repeatedly cite discusses the lack of "compelling evidence" of receipts actually received in *one tax year but recorded in the following year*.

"existing law" at issue was an ***administrative regulation promulgated by DOL***. Third, had Plaintiff's Counsel truly been attempting to challenge that regulation, it would have argued that 29 C.F.R. §779.266 was unworthy of deference pursuant to *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 843-44, 104 S. Ct. 2778, 81 L. Ed. 2d 694 (1984). That is the only avenue available to a court to "extend, modify or reverse" an existing administrative regulation. They never did, showing this new argument is just another weak after-the-fact justification to escape sanctions.

Worse, the same "steadfast refusal" noted in the Order is evident in this appeal. Plaintiff's Counsel continue to argue that the *Arilus* decisions provided a sound legal basis for their argument that accrual accounting is mandatory under the FLSA. See, p. 9 of Motion. The *Arilus* decisions did no such thing. The courts in each decision actually <u>followed</u> 29 CFR 779.266 and recognized that a cash basis method of accounting was an appropriate means of determining gross annual volume of sales. Plaintiff's Counsel misrepresented the holdings of these decisions to the Court in their PSJ and in their response to the SJ. Now, they try to fault the Magistrate Judge for his finding that the *Arilus* cases never provided any support for their legal theory that accrual accounting is mandatory. Not even the Eleventh Circuit's decision has convinced Plaintiff's Counsel's to stop promoting this absurd theory that has no basis whatsoever in law.

Finally, Plaintiff's Counsel argue that their acceptance of an extinguished Offer of Judgment was not bad faith. As noted above, the Order does not award sanctions on that basis. Nevertheless, Plaintiff's Counsel argues that the Magistrate Judge committed clear error by levying sanctions against them when there was an arguable basis in law for their actions, namely the 8th Circuit's *Perkins* decision. Importantly, Plaintiff's

Counsel's appeal does not state whether they ever ***shepardized*** *Perkins*. Clearly had they done so, they would have discovered the numerous opinions that have rejected *Perkins* in favor of the more reasoned view that a ***clerk of court*** lacks authority to override a pre-existing final judgment. If they did so, then they clearly ignored more current precedent.

III. <u>Award of Supplemental Sanctions</u>.

This appeal is just ***another*** motion filed by Plaintiff's Counsel that has no basis in fact or law. The reasons advanced by Plaintiff's Counsel for overruling the Order have no support in either the record or in the law. A supplemental award of sanctions against Plaintiff's Counsel is warranted for having to file this response. However, if that alone was insufficient reason to levy additional sanctions against Plaintiff's Counsel, then their outright disrespect for the rule of law and this Court provide ample grounds.

Plaintiff's Counsel audaciously argue that they should not be sanctioned because both ***this Court (and the 11th Circuit )*** "incorrectly" refused to consider revenue that did not result from "sales." See pp. 5 and 11 of Response. The "steadfast refusal" that warranted sanctions in the first place is equally evident in the Motion. The revenue they claim should have been included in annual gross volume of sales was a refund ABALUX received for an unearned worker's compensation premium <u>*from the previous year, i.e. 2014*</u>. Clearly, the refund was not a sale; it was return of money already paid out for a

business **_expense_**. [10] Regardless, the accusation is symptomatic of Plaintiff's Counsel's practice to ignore contrary law, evidence or rulings and/or to deflect blame onto others. [11]

Plaintiff's Counsel also arrogantly questions whether the Magistrate Judge "independently" verified Ms. Marcos' statements in her 9/1/17 and 9/14/17 declarations. See p. 9 of Response. First, it is not a court's responsibility to independently verify sworn statements; a court only determines if there are disputed issues of fact. Second, if Plaintiff's Counsel truly believed a widely used and accepted computer program like Quickbooks could make an addition error, _they were derelict_ in failing to hire an expert accountant to determine if this occurred. Third, it is never judicial error when a party fails to tender admissible evidence to challenge a sworn statement submitted by the opposing party. [12] / [13]

---

[10] Undaunted, Plaintiff's Counsel recently moved for re-hearing on this very issue before the 11th Circuit, once again relying on *Centeno-Bernuy v. Becker Farms*, 564 F. Supp 2d. 166 (W.D.N.Y. 2008), a single case from another district, when there is an explicit DOL regulation holding that not every source of income to a business is considered a sale. See, 29 CFR 779.259.

[11] This case well provides insight into what the Magistrate Judge has described as a "troubled history" between the two firms. See, p. 44 of Order. In this case alone, Plaintiff's Counsel's ignored: 1) clear evidence of lack of coverage; 2) clear language in procedural rules (such as scheduling a deponent for deposition twice without prior court approval in violation of Rule 30( 2)()(II)); 3) clear language in federal regulations (like 29 CFR 779.266); the plain holdings of cases (such as the *Arilus* decisions); and 4) clear notice that evidence they have presented to the Court is erroneous. When matters like these are brought to their attention by defense counsel, they ignore that, too.

[12] Plaintiff's Counsel also claims that they should not be sanctioned for presenting inaccurate charts and graphs because Defendants never specified the precise errors that were present. This argument is "chutzpah" at its best. Plaintiff's Counsel refused ABALUX the right under Rule 1006 to review their underlying data to determine how and where the mistakes were made and also refused to produce the underlying data in discovery.

[13] The Motion faults the Magistrate for failing to take account of the difference between state sales taxes resulting from wholesale and retail sales but it is not even clear

Significantly, at page 16 of the Motion, Plaintiff's Counsel levies a vitriolic attack against the Magistrate Judge, claiming he is biased against them personally, their law firm, and the entire Plaintiff's bar, as well as being an anathema to workers in general. This swipe is gratuitous and undeserved.

While Plaintiff's Counsel attempt to portray the Magistrate Judge's discussion of pre-suit investigations in FLSA cases as showing bias against themselves and the plaintiffs' bar, it is important to remember that _**they**_ were not sanctioned for this defalcation. The admonition to conduct a pre-suit investigation in FLSA suits is not new in this district or others. See, e.g. *Ortiz v. D & W Foods, Inc.*, 657 F. Supp. 2d 1328 (S.D. Fla. 2009). [14] The court in *Ortiz* held that a plaintiff's counsel in an FLSA suit is held to the same standard as other attorneys who knowingly or recklessly pursue a frivolous claim. See also *Epping v. Outdoor Living Pool & Patio*, 2009 U.S. Dist. LEXIS 54591 (M.D. Fla. 2009).[15] See also cases cited in *Estrada v. FTS USA, LLC*, 2018 U.S. Dist. LEXIS 11535 (S.D. Fla. 2018) [Judge Moore] holding that a plaintiff's attorney in an FLSA matter must conduct "meaningful research" before filing suit. This portion of the Order simply re-emphasizes precedent as a caution to _every_ attorney practicing in this area of

---

why this issue is being raised. _That was an issue at summary judgment but it is not a basis for the Magistrate Judge's imposition of sanctions._

[14] Plaintiff's Counsel certainly was aware of the *Ortiz* decision; it was cited by the Magistrate Judge in *Rodriguez v. Marble Care Int'l Inc.*, 863 F. Supp 2nd 1168 (S.D. Fla. 2012).

[15] It is more than a little ironic that Plaintiff's Counsel seeks to be relieved of sanctions for failing to conduct a pre-suit investigation when J.H. Zidell, P.A. raised the same argument against plaintiff's counsel's application for fees in *Bacallao v. J.H. Zidell, P.A.*, USDC Case No. 16-20709-cv-OR.

the law.[16] Indeed, the very purpose of publishing decisions, like the Order, is to provide guidance to future litigants. It does not "chill" worker's rights or the attorneys who represent them because a filing fee is not an admission fee ("$400 gets you through the door"). There is no right to file a frivolous lawsuit.

Next, Plaintiff's Counsel accuses the Magistrate Judge of what is akin to "talking about them behind their backs."[17] It is disingenuous for Plaintiff's Counsel to claim that a judge cannot consider comments made by other lawyers who either have practiced with them or practiced against them to determine the types of practice or procedures their law firm routinely employ. Indeed, other lawyers with similar wage and hour practices have been ordered by courts to employ safeguards. See commentary in *Epping v. Outdoor Living Pool & Patio*, *supra*, regarding Morgan & Morgan's pre-suit practices described in *In Re FLSA Cases*, 2008 U.S. Dist. LEXIS 108876 (M.D.Fla. 2008) See also *In re Sanctions Hearing: Remer*, 2012 U.S. Dist. LEXIS 195691 (S.D. Fla. 2012). Commentary in the Order about J. H. Zidell P.A.'s pre-suit practices does not establish bias against Plaintiff's Counsel or the law firm; it establishes what reasonable lawyers ought to do before filing suit.

The test for whether a judge has displayed partiality is whether an objective, disinterested, lay observer fully informed of the facts underlying the grounds on which recusal was sought would entertain a significant doubt about the judge's impartiality." *Parker v. Connors Steel Co.*, 855 F.2d 1510, 1524 (11th Cir. 1988). Review

---

[16] Numerous defense counsel also represent plaintiffs in FLSA cases. They are not immune from this advice.

[17] Magistrate Judge Goodman conducts numerous settlement conferences and undoubtedly hears commentary from opposing lawyers about their adversaries.

of the record in this case would leave no doubt to an objective obse rver that Plaintiff's Counsel *and defense counsel* equally have borne the brunt of the Magistrate Judge's worn patience. Indeed, the transcript of the 8/3/17 hea ring [DE 79] begins with the Magistrate Judge's expressed frustration ov er his continuing need to intercede in discovery matters.[18] Plaintiff's Counsel has not even come close to meeting the heavy burden of proof to establish bias . Indeed, the accusation is simply a ploy t o disqualify Magistrate Judge Goodman from hearing any future cases involving Plaintiff's Counsel.

IV.     Conclusion

The sanctions ordered by the Magistrate Judge have a sound basis in the record. Plaintiff's Counsel has not demonstrates by evidence or argument that his actions in awarding sanctions against them is clearly erroneous, contrary to law or an abuse of discretion. For these reasons, the Order should be affirmed in its entirety.

WHREFORE, Defendants respectfully r equest that the Court deny Plaintiff's Counsel's appeal and award supp lemental sanctions against Pl aintiff's Counsel for the time and expense they have incurred responding to this frivolous Motion.

---

[18] Defense counsel is humiliated by the fact that her reputation ha s been tarnished i n several written opinions and orders as a result of recurring frustrating interactions with lawyers of J.H. Zidell, P.A. The Order seems to insinuat e that no plaintiff's counsel should ever trust her representations of law or fact when in fact, other lawyers in the past have trusted her word and bond implicitly and have dism issed cas es on her representation that there was no enterprise coverage.

Respectfully Submitted,

LANGBEIN & LANGBEIN, P.A.
Counsel for the Defendants
8181 NW 154 St., Suite 105
Miami Lakes, FL. 33016
Ph: 305-556-3663
Fax: 305-556-3647
Email: langbeinpa@bellsouth.net

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing was filed electronically on 7/31/18 through CM/ECF and that a copy of the foregoing will be served via notification through CM/ECF on all counsel or parties of record on the attached service list.

By: /s/ Leslie W. Langbein
Leslie W. Langbein, Esq.
Fla. Bar No. 305391

SERVICE LIST

J. H. Zidell, Esq.
zabogado@aol.com
K. David Kelly, Esq.
David.kelly38@rocketmail.com
Rivkah Jaff, Esq.
Rivkah.jaff@gmail.com
Natalie Staroschak, Esq.
Nstar.zidellpa@gmail.com
J.H. ZIDELL, P.A.
300 71st Street, Suite 605
Miami Beach, FL 33141
Tel: (305) 865-6766
Fax: (305) 865-7167
Attorneys for the Plaintiff