## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NO. 16-20872-CIV-LENARD/GOODMAN

**JESUS LAZARO COLLAR,**

      Plaintiff,

**v.**

**ABALUX, INC. and
JUAN D. CABRAL,**

      Defendants.

_____/

## ORDER DENYING PLAINTIFF'S COUNSEL'S MOTION TO OVERRULE AND VACATE THE MAGISTRATE JUDGE'S ORDER ON DEFENDANTS' VERIFIED MOTION FOR SANCTIONS AGAINST PLAINTIFF'S COUNSEL (D.E. 164)

**THIS CAUSE** is before the Court on Plaintiff's Counsel's Motion to Overrule and Vacate ("Motion," D.E. 164) the Order of Magistrate Judge Jonathan Goodman on Defendants' Verified Motion for Sanctions Against Plaintiff's Counsel, ("Order," D.E. 152). Defendants filed a Response and request for additional sanctions on July 31, 2018, ("Response," D.E. 167), to which Plaintiff's Counsel filed a Reply on August 20, 2018, ("Reply," D.E. 178). Upon review of the Order, Motion, Response, Reply, and the record, the Court finds as follows.

## I.    Background

Because the Parties do not object to Judge Goodman's recitation of the relevant facts and procedural history—which borrows heavily from the Court's Summary Judgment Order, (D.E. 97)—the Court repeats it here for consistency:

Abalux was a small sign company owned and operated by Juan D. Cabral, located in Hialeah, Florida. (Defs.' Facts ¶¶ 1-2). It manufactured and installed signs, banners, and car wraps; it also sold sign-making materials to other businesses. (Id. ¶ 1). Abalux recorded all of the revenue it received in the QuickBooks™ accounting software program. (Id. ¶ 8).

At least as far back as 2012, Abalux used a cash/accrual[1] basis method of accounting. (Id. ¶ 10). This system of accounting allows a business to record a sale when the funds for the sale are actually or constructively received. (Id.).

The election of a cash/accrual method of accounting allowed Abalux to use the cash basis method as its accounting method for annual gross receipts. (Id.). Pursuant to the cash basis method of accounting, Abalux deemed a sale to be made when the services or goods were paid for by the customer, not when an invoice was created. (Id.).

Abalux elected to use a calendar year as its fiscal year so its federal corporate income tax returns were prepared based on monies it received in hand from January 1st through December 31st of each year. (Id. ¶ 12). Abalux filed federal corporate income tax returns showing the following gross sales for the year indicated:

2012 $208,014
2013 $368,017
2014 $487,007

(Id. ¶ 13). Abalux filed an amended 2015 tax return showing gross receipts of $489,019. (Id. ¶ 13 n. 2). Abalux's tax preparer and accountant, Sergio Massa, excluded sales tax and permit fee reimbursements from gross revenue when he prepared Abalux's 2015 tax return. (Id. ¶ 23).

Abalux's QuickBooks™ registers for the years 2014, 2015, and 2016 showed the following gross receipts (which include additional sums that were not attributable to sales, such as sales tax):

2014 $493,817.46
2015 $505,973.33
2016 $457,367.44

---

[1]      In context, it is clear that the reference to "cash/accrual" basis refers to a cash basis of accounting.

2

(Id. ¶ 14). Abalux was required to collect and remit Florida state sales tax of 7% on all taxable goods and services. (Id. ¶ 15). Abalux reported the amount of sales tax it collected on a monthly basis on a form known as a "DR15," which is filed under oath. (Id.). Abalux filed amended DR15s for 2015, stating its tax liability to the Florida Department of Revenue as $10,467.97. (Id.). Of this amount, $6,255.88 was attributable to sales tax collected at the retail level. (Id.).

Plaintiff was employed by Abalux as a laborer from August 2013 to January 2016. (Id. ¶ 24). His primary responsibilities were making and installing signs. (Id. ¶ 25). During 2015, there were weeks during which Plaintiff worked more than 40 hours but was not compensated at a rate equal to or greater than time-and-a-half. (Pl.'s Facts, ¶ 2).

On March 9, 2016, Plaintiff instituted this action, filing a Complaint for overtime wage violations under the FLSA. (D.E. 1). Therein, Plaintiff sought to recover unpaid overtime wages from 2013, 2014, 2015, and 2016. (Id. ¶ 14). Plaintiff has since abandoned his claim for overtime wages earned in 2013. (Pl.'s Resp. at 2 ¶ 3).

During the pendency of this case, a number of discovery issues arose. Relevant here, on August 7, 2017, the Undersigned issued a post-hearing Order permitting Plaintiff to fully explore Abalux's 2015 finances, including payments received in 2016 for goods sold and services rendered in 2015. (See D.E. 54). However, the Undersigned did not require Defendants to produce additional discovery regarding Abalux's finances for other years. (Id. at 3). On August 18, 2017, Plaintiff appealed the Undersigned's Order to Judge Lenard in a Motion to Overrule Judge Goodman's Post-Discovery Hearing Order, Permit Depositions, Require Further Discovery Responses, and to Extend all Deadlines by at Least 90 Days. (See D.E. 56). On October 20, 2017, Judge Lenard denied Plaintiff's Motion, finding that the Undersigned's discovery Order was not clearly erroneous or contrary to law. (D.E. 86).

The Parties filed cross-motions for summary judgment (D.E. 58, 68), and Judge Lenard denied Plaintiff's motion but granted Defendants' motion.

## The August 3, 2017 Discovery Hearing

Before Judge Lenard granted Defendants' summary judgment motion (on January 22, 2018), the parties appeared before the Undersigned for a discovery hearing on August 3, 2017. The parties made certain

representations at that hearing, and they took positions based on those representations.

Plaintiff's Counsel's Representations:

Plaintiff's counsel, Jamie Zidell, stated that a corporate representative of Defendant testified that the company had clients "on credit." [ECF No. 79, p. 35]. Mr. Zidell explained that this is "super important" because: "A company can make a sale, for example, in November of a given year on credit and give their customer 60 or 90 days to pay" and "that customer may not pay until the following year." [ECF No. 79, p. 35]. He continued to explain that "if that's the case, the amounts in the QuickBooks™ ledgers that were prepared [were] just on the 12-month January to December basis, the corporate rep . . . was never asked to prepare any type of report showing customers who were on credit." [ECF No. 79, p. 35]. If as the corporate representative admitted, "they were issuing invoices in November -- on October, November, and December, and not getting paid until the following year, then that becomes crucial for this particular case[.]" [ECF No. 79, p. 35].

The Undersigned then asked Mr. Zidell, "as a matter of law," when "a court has to decide whether a business generates $500,000 in annual revenue, does the court include in the calculation sales made in the latter part of a year when the money is not received until the early part of the following year?" [ECF No. 79, p. 36]. Mr. Zidell answered "yes," that it is included in the earlier year, and referred me to Centeno-Bernuy v. Becker Farms, 564 F. Supp. 2d 166, 176 (W.D.N.Y. 2008), where the court held money received in the following year counts was revenue for the prior year. [ECF No. 79, pp. 36-37].

Mr. Zidell highlighted page 176, which states, "[u]tilizing the income figures set forth on the 1999 tax returns, plus the payment from Mayer Brothers for $7,002.98, which defendants concede was income for 1999, defendants exceed the $500,000 threshold[.]" [ECF No. 79, p. 38]. Mr. Zidell told me that this "method that we are talking about, about prospective payments counting for the prior year, is commonly referred to as the **rolling quarter method**." [ECF No. 79, p. 40 (emphasis added)].

Later in the hearing, Mr. Zidell again represented that, "as far as corroborating what invoices were issued during a given year compared to where -- when payment was actually made on those invoices.  If it happened in a subsequent year, it would be our argument, based on our

4

legal authority that we cited, that that <u>should</u> [count] as sales made or
business done for the prior year." [ECF No. 79, p. 58 (emphasis added)].

Defense Counsel's Representations:

Leslie Langbein, Defendants' counsel, stated that she wanted to
"straighten out some misconceptions about the law[.]" [ECF No. 79, p.
64]. Ms. Langbein then pointed to 29 C.F.R. § 779.266, which she says
"allows the employer to either select a cash basis -- a fiscal year, or
alternatively if you cannot figure out whether the employer meets the
enterprise theory, you can use the rolling quarter method, assuming that
there is a prior year where they did meet the enterprise theory." [ECF No.
79, p. 65].

Ms. Langbein stated that § 779.266 says that "the sales records
maintained as a result of the accounting procedures used for tax or other
business purposes may be utilized in computing the annual dollar volume,
provided the same accounting procedure is used consistently, and that such
procedure accurately reflects the annual volume of sales or business."
[ECF No. 79, p. 65].

Ms. Langbein then further explained that Defendants' accountant
testified that "my client has consistently used a cash-basis method of
accounting." [ECF No. 79, p. 66]. Ms. Langbein noted that "[t]here are
IRS regulations that govern cash basis accounting, and basically it says that
your annual gross income equals money that you actually received or
money that you constructively received." [ECF No. 79, p. 66]. Ms.
Langbein then explained that "the regulation also says if there are
restrictions on the payment, and it is not readily available in the year that
you receive it or the year it is actually received . . . it does not count as
constructive income." [ECF No. 79, p. 67]. "So it's not the fact that my
client issued an invoice between November 15th and December 31st, it's
actually when they received the payment for that invoice[.]" [ECF No. 79,
pp. 67-68].

Still later in the hearing, the Undersigned asked Ms. Langbein, "I
thought that your principal argument out of the box is that it's legally
irrelevant [to produce 2015 invoices] because our client is on a cash basis
[method of accounting,]" and "therefore if we receive money on January
9th, 2017, that's used to calculate the gross revenues for 2017, not 2016.
Isn't that your primary argument?" [ECF No. 79, pp. 78-79]. Ms.
Langbein said it was her position and then explained that, as a "fall back
argument," if her client is required to produce the records, her client should

5

only have to list customers' initials instead of full names as a matter of privacy.  [ECF No. 79, p. 79].

Ms. Langbein repeated her point that "it doesn't really matter what was invoiced.  What -- what matters is how much did they receive in payments [for that year]."  [ECF No. 79, p. 90].  "I could issue an invoice on December 31st [2016], and if a customer does not pay until January 15th, it is 2017 income."  [ECF No. 79, p. 92].  Additionally, Ms. Langbein noted that a "vast majority" and "99.6%" of Defendants' customers are "COD" (on a cash-on-delivery basis), so there are not "many situations where [customers] were making payments in January of a year, but the order was placed in December of the prior year."  [ECF No. 79, p. 80].

The Undersigned's discovery ruling required Defendants to provide a supplemental interrogatory answer or affidavit explaining whether Abalux received payments in 2016 for invoices created in December 2015.  [ECF No. 54].  It also required them to produce a list of customers (by initials only) who were invoiced in 2015 but did not make a payment or payments until 2016.

This ruling was limited to discovery and did not determine whether payments received in 2016 for 2015 invoices should in fact be used to calculate the 2015 annual revenue, nor did it find that Abalux was properly using a cash basis method to calculate annual revenue.  Those decisions were not made until Judge Lenard issued her summary judgment ruling (almost six months later, on January 22, 2018).

## The Summary Judgment Ruling [ECF No. 97]

The primary issue in the summary judgment motions was whether Abalux's annual gross revenue was less than $500,000.  Although Plaintiff's claim concerned 2014-2016, Judge Lenard determined that Plaintiff had not met his burden of establishing a genuine issue of material fact concerning Abalux's gross volume of sales or business for 2014 and 2016.  Therefore, the crux of her analysis centered only on 2015 -- and Plaintiff's contention that money received in 2016 for sales made or services rendered in 2015 had to be allocated to the evaluation of whether the annual sales in 2015 met the $500,000 jurisdictional limit.

Defendants argued that Plaintiff could not establish enterprise jurisdiction for 2015 because Abalux had less than $500,000 in annual gross volume of sales for that year.  Defendants explained that Abalux used the cash-basis method for calculating gross volume of sales based on a

6

calendar year.  Plaintiff, however, insisted that the accrual method **had** to be used.  But as explained below, the case law his counsel relied upon does not hold that the accrual method is <u>required</u>.  Instead, the few cases he cited merely noted that the accrual method is <u>preferable</u> when payments are received in the following year.  Significantly, the cash basis method is <u>permissible</u>.  Because Plaintiff's legal theory was incorrect, Judge Lenard granted summary judgment in Defendants' favor.

The FLSA "requires employers who meet its preconditions to pay workers a minimum wage and to provide overtime pay where workers exceed forty hours per week."  <u>Polycarpe v. E&S Landscaping Serv., Inc.</u>, 616 F.3d 1217, 1220 (11th Cir. 2010) (citing 29 U.S.C. §§ 206(a) (minimum wage), 207(a) (overtime)).  "Under [the] FLSA, an employer is required to pay overtime compensation if the employee can establish enterprise coverage or individual coverage."  <u>Thorne v. All Restoration Servs., Inc.</u>, 448 F.3d 1264, 1265-66 (11th Cir. 2006).  Only enterprise coverage is at issue in this case.  (See Compl. ¶¶ 8, 11; Defs.' Mot. at 4).

An employer falls under the enterprise coverage section of the FLSA if it:

> [1] has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and

> [2] is an enterprise whose annual gross volume of sales made or business done is not less than $500,000 (<u>exclusive of excise taxes at the retail level</u> that are separately stated)[.]

29 U.S.C. § 203(s)(1)(A) (emphasis added).

As noted by Judge Lenard, Abalux conceded that it engaged in interstate commerce and employed two or more employees who handled goods and materials which moved through interstate commerce.  [ECF No. 97, p. 7, n. 2].

"The annual gross dollar volume of sales made or business done of an enterprise or establishment consists of the gross receipts from all of its sales or its volume of business done during a 12–month period."  29 C.F.R. § 779.265.  That twelve-month period is typically a fiscal year (which may be a calendar year), <u>Flores v. Nuvoc, Inc.</u>, 610 F. Supp. 2d 1349, 1357 (S.D. Fla. 2008) (finding calendar year to be appropriate period); however,

under certain circumstances, annual gross volume of sales may be calculated using the "rolling quarter method."[2]  29 C.F.R. § 779.266; see also Flores, 610 F. Supp. 2d at 1356-58.  "Once either basis has been adopted it must be used in making subsequent calculations." § 779.266(b).  "The sales records maintained as a result of the accounting procedures used for tax or other business purposes may be utilized in computing the annual dollar volume provided the same accounting procedure is used consistently and that such procedure accurately reflects the annual volume of sales or business." Id.

In the summary judgment Order, Judge Lenard held that "the undisputed facts show that Abalux's gross volume of sales or business done was at most $493,817.46 in 2014, and was at most [$457,367.44] in 2016," which then meant that "there is no enterprise coverage under the FLSA, and Defendants are entitled to summary judgment as to those years."  [ECF No. 97, p. 9].

The Court then turned to 2015.  The primary dispute concerned the treatment of payments received in 2016.  Plaintiff argued that Abalux's 2015 gross sales calculation should be increased by at least $16,527.41 (and perhaps by as much as $24,044.34) to reflect payments received in 2016 for goods sold or services rendered in 2015.  (Pl.'s Facts ¶¶ 3-4, 6; Pl.'s Resp. at 4-11).  However, Judge Lenard held that "Plaintiff's argument that they should be applied to Abalux's 2015 gross sales calculation is **misplaced**."  [ECF No. 97, p. 10 (emphasis added)].

To reach the conclusion that Plaintiff's argument was incorrect, Judge Lenard focused on the applicable Department of Labor regulations.  She noted that the "regulations expressly provide that 'sales records maintained as a result of the accounting procedures used for tax or other business purposes may be utilized in computing the annual dollar volume provided the same accounting procedure is used consistently and that such procedure accurately reflects the annual volume of sales or business.'"  [ECF No. 97, pp. 10-11 (quoting § 779.266(b))].

The summary judgment Order emphasized that the undisputed facts establish that Abalux had since 2012 consistently used a **cash basis** accounting method for annual gross receipts.  (Facts ¶ 10).  This method allows Abalux to record a sale when the funds for the sale are actually or

---

[2]       Judge Lenard pointed out that neither party urged the applicability of the "rolling quarter method" to this case. [ECF No. 97, p. 8 n. 3].

constructively received, **not when the invoice is created**.  (Id. ¶¶ 10-11) (emphasis added).

As highlighted by Judge Lenard, Abalux elects to use the calendar year as its fiscal year so its federal corporate income tax returns were prepared based on monies it received in hand from January 1st through December 31st of each year, regardless of when the invoices for those payments were created.  (Id. ¶ 12).  Therefore, any payments received in 2016 for goods sold or services rendered in 2015 were properly applied to the **2016** gross sales calculation to be consistent with prior years' accounting method.  § 779.266(b).

After flagging Abalux's cash method and the consequential conclusion that payments received in 2016 were attributable to 2016 gross revenue calculations, Judge Lenard rejected Plaintiff's contention that the accrual method had to be used.  Throughout the litigation, Plaintiff repeatedly and consistently argued that the accrual method, as opposed to the cash method, was **mandatory**.

For example, in his Motion to Overrule a Post-Hearing Discovery Order, Plaintiff argued that "payments made early in the year, for sales accomplished late in the previous years, **must** be included in such previous year's gross annual income."[3]  [ECF No. 56, p. 6 (emphasis added)]. Likewise, he also argued, in the same motion that "$489 **must** be included in Defendants' 2015 gross annual income (sic) although the payment was made in 2016."  [ECF No. 56, p. 4 (emphasis added)].  And he also contended "that at least $16,527.41 should be added to Defendants' gross annual income (sic) in 2015" (regarding sales in 2015 where payment was made in 2016).  In the same motion, Plaintiff included an argument heading, highlighted in bold and underlined font, that "Business Done in a Prior Year that was Paid in Subsequent Year, **Must** be Included in the Gross Annual Income of the Prior Year."  [ECF No. 56, p. 9 (emphasis added)].

Similarly, in his motion for partial summary judgment, Plaintiff repeated those same incorrect assertions, including the topic heading in bold and underlined font and the unequivocal assertion that "those payments, if made early in the year for sales made late in the previous years, **must** be included in such previous years' gross annual income." [ECF No. 58, pp. 6, 8 (emphasis supplied)].

---

[3]    The applicable test involves gross **revenue**, not income (i.e., "annual gross volume of sale or business done").

Plaintiff's Reply concerning his partial summary judgment motion again argued that a payment "**must** be included in Defendants' 2015 gross annual income (sic) although the payment was made in 2016" and that an additional $16,527.41 "**should** be added to Defendants' gross annual income (sic) in 2015." [ECF No. 73, p. 2 (emphasis supplied)].

Continuing with his strident position that money received in 2016 must be included in Defendants' 2015 "gross annual income (sic)," Plaintiff again repeated[4] those same arguments in his response to Defendants' summary judgment motion. [ECF No. 77, pp. 4-8].

Notwithstanding Plaintiff's often-invoked and stridently-articulated view that the accrual method was <u>required</u> (even though he relied on case law explaining that it was merely "preferable"), Judge Lenard found the theory to be completely unconvincing and quickly rejected it. Rather than paraphrase Judge Lenard's holding that Plaintiff's primary legal theory was flat-out incorrect, the Undersigned will simply quote it here:

> Although Plaintiff argues that it is "preferable" to use an accrual accounting method in which late payments received are applied to prior year sales figures, (Pl.'s Resp. at 6 (citing <u>Arilus v. Joseph A. DiEmmanuele, Jr., Inc.</u>, 895 F. Supp. 2d 1257, 1265 (S.D. Fla. 2012), <u>aff'd</u> 522 F. App'x 881))), **it cites to no authority holding that such a method is _required_.** To the contrary, in <u>Arilus</u>, the Eleventh Circuit affirmed the entry of summary judgment in favor of an employer that used a cash basis method of accounting. 895 F. Supp. 2d at 1264, <u>aff'd</u> 522 F. App'x 881. Moreover, several courts have concluded that a business's total gross volume of sales or business done may be determined from its tax returns. <u>Flores,</u> 610 F. Supp. 2d at 1355-56; <u>Stout v. St. Amour's Lawn Care</u>, LLC, No. 6:07—cv-1882-Orl-19UAM, 2008 WL 816818, at *2 (M.D. Fla. Mar. 25, 2008); <u>Lopez v. Top Chef Inv., Inc.</u>, No. 07-21598-CIV, 2007 WL 4247646, at *3 (S.D. Fla. Nov. 30, 2007); <u>Thompson v. Robinson</u>, No. 6:06-cv-771-Orl-19JGG, 2007 WL 2714091, at *4 (M.D. Fla. Sep. 17, 2007); <u>Xelo v. Mavros</u>, No. 03-CV-3665 (NG)(MDG), 2005 WL 2385724, at *3 (E.D.N.Y. Sept. 28, 2005); <u>Avila v. Lee</u>, No. G88-749, 1989 WL 200976, at *2 (W.D. Mich. July 13, 1989) ("While tax returns are not necessarily determinative of gross annual sales, they may be utilized by the defendant as long

_____

[4]     Plaintiff argued that the accrual method "should be" used and must be included or "should be added." [ECF No. 77, pp. 4-8].

as the same accounting procedure is used consistently and the procedure accurately reflects the annual volume of sales or business."). **Because Defendants consistently used the acceptable cash basis method as its accounting method for annual gross receipts, payments received in 2016 for sales made or services rendered in 2015 are not included in the 2015 calculation of gross volume of sales or business done**.

[ECF No. 97, pp. 11-12 (emphasis supplied)].[5]

(Order at 5-19.)

On January 26, 2018—four days after the Court granted Defendants' motion for summary judgment and entered Final Judgment in favor of Defendants—Plaintiff's Counsel filed a Notice of Acceptance of Defendant's Offer of Judgment Under Rule 68 of the Federal Rules of Civil Procedure.  (D.E. 99.)  On January 30, 2018, the Court entered an Order Striking the Notice of Acceptance, finding that "a Rule 68 offer of judgment does not remain open and subject to acceptance by the plaintiff after summary judgment has been granted in favor of the defendant."  (D.E. 101 (citations omitted).)  The same day, Plaintiff's Counsel moved for reconsideration of the Court's Order Striking the Notice of Acceptance.  (D.E. 102.)  On February 13, 2018, the Court denied the Motion for Reconsideration.  (D.E. 108.)

Plaintiff appealed, challenging (1) the Court's ruling that Plaintiff's employment in 2015 was not covered under the FLSA because Abalux had less than $500,000 in annual gross sales, (2) the denial of his motion to expand discovery, and (3) the striking

---

[5]     Although the summary judgment Order noted that "neither Party argues that the 'rolling quarter method' is applicable to this case," Plaintiff's lead counsel, Jamie Zidell, emphasized the rolling quarter method at the August 3, 2017 discovery hearing. [ECF No. 97, p. 8 n. 3].

of his notice of accepting an offer of judgment four days after the Court entered Final

Judgment.  (<u>See</u> Notice of Appeal, D.E. 110.)  On July 17, 2018, the Eleventh Circuit

Court of Appeals affirmed the Court's judgment in a published opinion.[6]  <u>Collar v.</u>

<u>Abalux, Inc.</u>, 895 F.3d 1278 (11th Cir. 2018).

Meanwhile, on March 16, 2018, Defendants filed their Motion for Sanctions.

(D.E. 124.)   As summarized by Judge Goodman, Defendants seek sanctions on the

following grounds:

> (1) Plaintiff filed the lawsuit without first contacting Defendants to see if
> Abalux was subject to the $500,000 per-year enterprise coverage; (2)
> Plaintiff's counsel did not timely respond to defense counsel's notice that
> Abalux did not meet the jurisdictional threshold for 2013-2015; (3)
> Plaintiff's counsel ignored a request to dismiss this lawsuit even after
> receiving copies of the face page of Abalux's 2013 and 2014 tax returns
> and of its monthly revenue reports for 2015; (4) Plaintiff's counsel
> repeatedly refused to dismiss the lawsuit after being served with several
> Rule 11 motions; (5) instead of dismissing the lawsuit, Plaintiff's counsel
> embarked on an aggressive discovery strategy; (6) Plaintiff's counsel
> ignored the deposition testimony of Defendants' accountant and served
> even more discovery; (7) Plaintiff's counsel ambushed Defendants' Rule
> 30(b)(6) designee at a deposition with summary charts purporting to
> establish that Abalux's QuickBooks™ registers were unreliable and that its
> 2014-2016 tax returns were inaccurate -- but those summaries, prepared by
> someone at Plaintiff's law firm -- were incorrect because the unknown
> person who prepared them "transposed certain numbers and improperly
> added figures in columns[;]" (8) Plaintiff's counsel argued that the accrual
> method of accounting was required; (9) Plaintiff's counsel used the
> incorrect summaries to support the motion for partial summary judgment;
> (10) Plaintiff's counsel refused to withdraw the incorrect summaries even
> after they were provided with a declaration attesting to the inaccuracy of

---

[6]       Plaintiff's counsel's Motion argues that the Eleventh Circuit incorrectly decided
the appeal, and indicates that it anticipated filing a motion for rehearing.  (<u>Id.</u> at 11 n.10, 14
n.17.)  The Eleventh Circuit denied rehearing on August 7, 2018.  <u>Collar v. Abalux</u>, Case no. 18-
10676-HH (11th Cir. Aug. 7, 2018).  Mandate issued August 15, 2018.  (D.E. 175.)

the summaries;[7] (11) Plaintiff's counsel improperly tried to accept an Offer of Judgment after the Court granted Defendants' summary judgment motion and entered final judgment in Defendants' favor; and (12) Plaintiff's counsel filed a motion for reconsideration, asking Judge Lenard to reconsider the Order striking Plaintiff's purported notice of acceptance of Defendants' Offer of Judgment.

(Order at 20-21.)  On March 19, 2018, the Court entered an Order referring the Motion to Judge Goodman without instruction as to whether the Court expected an order or a report and recommendation.  (D.E. 125.)

On July 5, 2018, Judge Goodman issued his Order granting the Motion for Sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure, 28 U.S.C. § 1927, and the Court's inherent authority.  (D.E. 152 at 2-3.)  As a threshold matter, he found that he had jurisdiction to issue an order on the Motion because the at-issue sanction was non-dispositive of any claim, and magistrate judges have jurisdiction to enter sanctions orders for discovery violations that do not strike claims, preclude defenses, or generate litigation-ending consequences.  (Id. at 31.)

Substantively, Judge Goodman found that sanctions were warranted for: (1) failing to advise the Court that the summary charts of Abalux's sales prepared by Plaintiff's counsel and filed in support of Plaintiff's motion for partial summary judgment were inaccurate after learning of their inaccuracies, (id. at 49-54); (2) refusing to voluntarily dismiss the case after learning that Abalux did not generate gross volume of sales sufficient to establish enterprise jurisdiction under the FLSA, and instead insisting that

---

[7]    According to Defendants' sanctions motion, "Plaintiff's Counsel apparently did not care that the Court might rely on false data to rule on their PSJ." [ECF No. 124, p. 19]. Defendants argued that "creating evidence to foil entry of summary judgment is the essence of bad faith." [ECF No. 124, p. 19].

the Court <u>must</u> apply the accrual method of accounting to determine Abalux's gross sales even after learning that Abalux used the cash basis method of accounting and "[d]espite learning of federal regulations, an IRS publication, and case-law authority that permitted Abalux to use the cash method," (<u>id.</u> at 55).[8]   Judge Goodman chose to start the calculation for fees and costs on September 15, 2017—the day after Defendants filed their opposition to Plaintiff's motion for partial summary judgment that noted "both the incorrect charts and graphs **and** the legal specifics explaining why the accrual method is not required (and why Abalux could use the cash basis method)." (<u>Id.</u> at 56.)

Finally, Judge Goodman found that the sanctions should be imposed against K. David Kelly, the attorney "responsible for advancing the legally meritless argument that the accrual method of accounting must be used for purposes of calculating annual revenue when assessing whether the $500,000 annual revenue threshold has been met" and "the attorney who failed to rescind the incorrect charts and graphs referenced in his motion." (<u>Id.</u> at 59.)   Judge Goodman also sanctioned the law firm for which Mr. Kelly worked, J.H. Zidell, P.A.   (<u>Id.</u> at 60.)   Judge Goodman directed Defendants to submit documentation showing fees and costs incurred from September 15, 2017, and permitted

---

[8]      Judge Goodman specifically declined to award sanctions for: (1) Plaintiff's counsel's failure to takes steps to determine whether Abalux satisfied the $500,000 jurisdictional threshold before filing the lawsuit, (Order at 43-45); (2) Plaintiff's counsel failure to immediately dismiss the case after Defense counsel provided him with the face page of Abalux's 2014 and 2015 tax returns showing gross sales of less than $500,000, (<u>id.</u> at 46); (3) Plaintiff's counsel's failure to accept Defendants' representation that Abalux used the cash basis method of accounting and ongoing strategy to obtain more discovery about the company's revenues, tax treatment, customers, and financial business practices, (<u>id.</u> at 46-49); and (4) accepting an offer of judgment after Final Judgment had been entered in favor of Defendants, (<u>id.</u> at 56-57).

Plaintiff's counsel to challenge "the specifics of the requested award . . . ." (Id.)  At the

end of the Order, Judge Goodman made "A Final Observation" that provides, in part:

> Based on comments the Undersigned has heard from attorneys working (or
> who have worked) for the Zidell firm and from defense attorneys opposing
> lawsuits filed in this district by Mr. Zidell's firm, it appears as though Mr.
> Zidell's firm rarely, if ever, contacts the putative defendant employer or its
> counsel for information about the wage claim or the annual revenues issue
> before filing the lawsuit.  Likewise, it seems as though the law firm rarely,
> if ever, sends a demand letter before filing the wage lawsuits.
>
> Thus, it seems as though the law firm's practice is to not conduct pre-filing
> due diligence involving efforts to obtain information from the employer.  If
> any inquiry is done, then it seems as though it is primarily done through
> reliance on information received only from the firm's own client -- the
> plaintiff.  Under Worldwide Primates[9] and its progeny, this practice could
> well be classified as a Rule 11 violation in virtually every case where the
> facts or legal theory prove to be significantly different than the information
> received from the plaintiff or the assumptions made by the plaintiff.
>
> Given the myriad sanctions orders already entered against Mr. Zidell and
> his law firm, it appears as though he and the attorneys working in his firm
> have not been swayed by the sanctions orders.  They seem to be indifferent
> to the possibility that their business model (of filing FLSA lawsuits without
> first checking the factual and legal theories with the putative defendant)
> may well generate a sanctions order.
>
> To place this scenario in context, however, it seems as though all of the
> other firms that routinely file a significant number of FLSA lawsuits in this
> district follow the same business model -- and do not fulfill their Rule 11
> obligations by conducting a pre-filing inquiry with the putative defendant.
> But the Undersigned is not aware of any "but-everyone-else-does-exactly-
> what-I-do" exception to Rule 11.
>
> To the extent that Mr. Zidell's firm or other firms are named as violators in
> future sanctions motions in other cases, the movants might be able to
> reference this Order (and others cited in it) to support the view that not
> pursuing a basic pre-filing inquiry about the critical facts with the putative
> defendant is tantamount to a virtually automatic Rule 11 violation.

---

[9]       Worldwide Primates, Inc. v. McGreal, 87 F.3d 1252, 1254-55 (11th Cir. 1996).

(Id. at 61-62.)

On July 17, 2018, Plaintiff's counsel filed the instant Motion to Overrule and Vacate Judge Goodman's Order.  (D.E. 164.)  On July 31, 2018, Defendants filed their Response and request for additional sanctions for having to respond to Plaintiff's Motion.  (D.E. 167.)  On August 20, 2018, Plaintiff's counsel filed its Reply.  (D.E. 178.)

## II.    Legal Standard

As an initial matter, the Court must determine the legal standard with which to review Judge Goodman's Order.  Plaintiff's counsel argues that Judge Goodman did not have jurisdiction to enter an order and, therefore, the Court should construe the Order as a report and recommendation and review it de novo.  (Id. at 3-4.)  Plaintiff's counsel also appears to argue that Judge Goodman's "Final Observation" exhibits impartiality toward Plaintiff's counsel's firm and, for that reason, the Court should review the Order de novo.  (Id. at 16-19.)  Defendants argue that the local magistrate judge rules authorize Judge Goodman to issue an order on the Motion for Sanctions.  (Resp. at 1-2.)

A magistrate judge's powers and jurisdiction are prescribed by 28 U.S.C. § 636.  Pursuant to 28 U.S.C. § 636(b)(1)(A), the Court may designate a magistrate judge to hear and determine certain nondispositive, pretrial matters, and thereafter reconsider or review the pretrial matter if "shown that the magistrate judge's order is clearly erroneous or contrary to law."  See also Fed. R. Civ. P. 72.  Additionally, "[a] magistrate judge may be assigned such additional duties as are not inconsistent with the Constitution and laws of the United States."  28 U.S.C. § 636(b)(3).  However, a magistrate judge may not issue an order on a pretrial matter dispositive of a party's claim or defense.  Fed. R. Civ. P. 72(b).

16

Rather, a magistrate judge may only issue a report recommending a disposition, to which the parties may object.  Id.  "The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to.  The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions."  Fed. R. Civ. P. 72(b)(3); see also 28 U.S.C. § 636(b)(1).

Although Section 636(b)(1)(A) speaks in terms of "pretrial" matters, courts have consistently found that a magistrate judge has jurisdiction to issue a post-trial (or post-judgment) order on a motion for sanctions where the basis for sanctions arose in the case's preliminary stages, unless the nature of the sanction is dispositive of a party's claim or defense, e.g., dismissal.  See Robinson v. Eng, 148 F.R.D. 635, 639-45 (D. Neb. 1993) (finding that a post-judgment motion for Rule 11 sanctions was within magistrate judge's authority under 28 U.S.C. § 636(b)(1)(A) as a "nondispositive," "pretrial matter," and explaining in great detail why magistrate judges are authorized to issue orders on post-judgment sanctions motions where the basis for sanctions arose in case's preliminary stages); see also McAllister Towing of Va., Civil Action No. 2:10cv595, 2012 WL 2572058, at *1 (E.D. Va. July 2, 2012) (finding that the magistrate judge had authority to enter post-trial order on motion for sanctions because the bases for the sanctions were pretrial discovery violations); Giganti v. Gen-X Strategies, 222 F.R.D. 299, 304 & n.9 (E.D. Va. 2004) (finding, on review of magistrate judge's post-judgment sanctions order, that "[t]he better reasoned cases conclude that the issue of Rule 11 sanctions is a non-dispositive matter subject to clearly erroneous review under Rule

17

72(a), unless the nature of the sanction imposed, i.e., dismissal of the offending claim or defense, is itself dispositive of the claim or defense," and collecting cases); Bergeson v. Dilworth, 749 F. Supp. 1555, 1561-63 (D. Kan.1990) (finding that magistrate judge has authority under § 636(b)(1)(A) to impose post-judgment Rule 11 sanctions because, broadly construed, the term "pretrial matter" means any matter unrelated to the claims litigated at trial); Burns v. Imagine Films Entm't, Inc., 164 F.R.D. 594, 599-601 (W.D.N.Y. 1996); Rubin v. Smith, 882 F. Supp. 212, 216 (D.N.H. 1995).  Although it does not appear that the Eleventh Circuit has addressed this precise issue, the former Fifth Circuit has held that a magistrate judge's post-judgment award of discovery expenses and attorneys' fees "was still a 'pretrial matter pending before the court'" over which the magistrate judge possessed authority to enter an order.   Merritt v. Int'l Brotherhood of Boilermakers, 649 F.2d 1013, 1018 (5th Cir. 1981) (quoting 28 U.S.C. § 636(b)(1)(A)).[10]

Here, the sanctionable conduct occurred in the preliminary stages of the case, and the nature of the sanctions—attorneys' fees and costs—is non-dispositive of any claim or defense.   Therefore, the Court reviews Judge Goodman's Order under the clearly erroneous or contrary to law standard.  See Robinson, 148 F.R.D. at 645-47 (reviewing sanctions order awarding attorneys' fees and costs for clear error).

Plaintiff's counsel relies on cases holding that a district court must review de novo a magistrate judge's award of attorney's fees that has been properly objected to.  (Mot. at

---

[10]     In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent all decisions handed down by the former Fifth Circuit before October 1, 1981.

3 (citing Baylor v. Mitchell Rubenstien & Assocs., P.C., 857 F.3d 939, 947 (D.C. Cir. 2017); McCombs v. Meijer, Inc., 395 F.3d 346, 360 (6th Cir. 2005); ClearOne Commc'ns, Inc. v. Bowers, 509 F. App'x 798, 804-05 (10th Cir. 2013); McConnell v. ABC-Amega, Inc., 338 F. App'x 24, 26 (2d Cir. 2009)).)  These cases are inapposite as none of them deal with a sanctions order, and Judge Goodman has not calculated a fee and cost award.

Finally, to the extent that Plaintiff's counsel is attempting to argue that the Court should review Judge Goodman's Order de novo because his "Final Observation" evinces impartiality, the Court declines to do so.  To begin with, Plaintiff's counsel cites no authority supporting such an argument.  And in any event, the Court finds that Judge Goodman's "Final Observation" does not evince impartiality.

For these reasons, the Court will review Judge Goodman's Order under the clearly erroneous or contrary to law standard.

## III.   Discussion

Plaintiff's counsel objects to Judge Goodman's findings that sanctions are warranted for (1) Plaintiff's counsel's failure to withdraw the incorrect charts, (Mot. at 4-7), and (2) insisting that the accrual method must be used and for failing to voluntarily dismiss the lawsuit, (id. at 7-15).  The Court will address each argument in turn.[11]

---

[11]      The Court is compelled to note that Plaintiff's counsel's Motion is often difficult to follow.  It is laced with irrelevant arguments pertaining to the merits of the underlying claims, (see Mot. at 7-14); voices objections to findings that Judge Goodman did not make, (id. at 15-16 (arguing that it should not be sanctioned for accepting the offer of judgment after the Court entered final judgment in favor of Defendants, even though Judge Goodman did not order sanctions on that basis); and contains at least one blatantly false assertion—specifically, that it

a.      **Failure to withdraw the incorrect charts**

First, Judge Goodman ordered sanctions for Plaintiff's counsel's failure to withdraw or correct charts of Abalux's annual sales—which Plaintiff's counsel prepared and submitted to the Court—after learning that they were inaccurate.  (Order at 50-54.) The charts were submitted and relied upon in connection Plaintiff's Motion to Overrule Judge Goodman's Discovery Order, (D.E. 56, D.E. 56-6), and Plaintiff's Motion for Partial Summary Judgment, (see D.E. 58 at 4 n.1).

Plaintiff's counsel objects, arguing that there is no evidence that the charts were created or relied upon in bad faith, that they attempted to ensure that the charts were correct, and that they did not need the charts to support their legal theory.  (Mot. at 4-5.)

Rule 11 of the Federal Rules of Civil Procedure establishes that advocating any written motion or paper presented to a court certifies that "to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . the factual contentions have evidentiary support . . . [and] the denials of factual contentions are warranted on the evidence[.]"  Fed. R. Civ. P. 11(b).  The rule "emphasizes the duty of candor by subjecting litigants to potential sanctions for insisting upon a position after it is no longer tenable."  Fed. R. Civ. P. 11(b) advisory committee notes.  Under Rule 11(c)(2)'s "safe harbor" provision, a party must serve a motion for

---

argued in response to Defendants' motion for summary judgment that when including monies attributed to workers' compensation, Defendants would have exceeded the FLSA's jurisdictional threshold for 2015, (id. at 11 (citing D.E. 77 at 12-13))).  The Court has carefully reviewed Plaintiff's counsel's Motion in its entirety and has carefully considered each of the arguments raised therein.  The Court finds all of the arguments to be meritless and/or irrelevant.  The Court will limit its discussion to Plaintiff's counsel's proper objections to Judge Goodman's findings.

sanctions upon the offending party, describe the specific conduct alleged to violate Rule 11(b), and give the offending party 21 days to withdraw the challenged paper, claim, defense, contention, or denial.  Fed. R. Civ. P. 11(c)(2).

Courts also "have the inherent authority to control the proceedings before them, which includes the authority to impose 'reasonable and appropriate' sanctions.  Martin v. Automobili Lamborghini Exclusive, Inc., 307 F.3d 1332, 1335 (citation omitted).  "To exercise its inherent power a court must find that the party acted in bad faith."  Id. (citing In re Mroz, 65 F.3d 1567, 1575 (11th Cir. 1995)).

According, to Judge Goodman's Order, Defendants' seventh renewed Rule 11 motion explained that on September 14, 2017, Defendants responded to Plaintiff's motion for partial summary judgment with a declaration showing that Plaintiff's counsel's charts "were based on transposed numbers and faulty calculations" and case law which held that Plaintiff's counsel's "reliance on the $508,518.69 was both legally and factually unjustified."  (Order at 40.)  However, Plaintiff's counsel failed to correct the charts, withdraw their reliance on the charts, or otherwise inform the Court of their inaccuracies.  Therefore, Judge Goodman found that Rule 11 sanctions were warranted.  (Id. at 52-53 (citing Ali v. Mid-Atlantic Settlement Servs., Inc., 233 F.R.D. 32 (D.C. Cir. 2006) (entering sanctions against defense attorney who challenged service of process by submitting a noncompliant affidavit that recited spare and selective facts about client's residences and asserting the incorrect legal position that he was never served); Del Canto v. ITT Sheraton Corp., 865 F. Supp. 934, 938 (D.C. Cir. 1994) (entering sanctions against the plaintiff's attorney and noting that the plaintiff's defamation allegations "are

contradicted so many ways on this record that the Court must conclude that the plaintiff did not conduct reasonable pre-filing inquiries and that the plaintiff should have realized . . . that [his] claim was not well founded in fact"); Roberts v. Zeman, 191 F.R.D. 575, 580 (N.D. Ill. 2000) (entering sanctions award against the plaintiff's counsel because he incorrectly advised the magistrate judge that he had calculated damages to satisfy the $75,000 jurisdictional amount).)

Judge Goodman also found that although there was no evidence "Plaintiff's counsel intentionally used bogus evidence . . . submitting a motion referencing charts and graphs and then failing to advise the Court that these documents are factually incorrect after learning of the errors could, as Defendants contend, be analogized to submitting falsified evidence." (Id. at 53.) And although Judge Goodman did "not necessarily" conclude that Plaintiff's counsel perpetrated a fraud on the Court, "their stubborn refusal to advise the Court that the charts and graphs were factually incorrect is surely serious enough to justify sanctions." (Id.) Thus, Judge Goodman found sanctions were warranted based on the Court's inherent authority. (See id. (citing Plastech Holding Corp. v. WM Greentech Automotive Corp., 257 F. Supp. 3d 867, 875 (E.D. Mich. 2017) (imposing sanction of with-prejudice dismissal after plaintiff submitted a fabricated document as an exhibit to its first and second amended complaint and rejecting the plaintiff's "mistaken belief" explanation as unavailing and unsupported by the record evidence); Hamburger v. Northland Grp., Inc., No. 3:13-CV-01155, 2016 WL 554833, at *7 (M.D. Pa. Feb. 10, 2016) ("We have the power to police our own proceedings and to punish a person who submits false information to us, even if those acts did not have any

effect."); <u>Scholastic, Inc. v. Stouffer</u>, 221 F. Supp. 2d 425, 444 (S.D.N.Y. 2002) (imposing sanctions for submitting falsified evidence and explaining that plaintiff "failed to correct her fraudulent submissions, even when confronted with evidence undermining the validity of those submissions").

The Court finds that Judge Goodman's findings on this issue are not clearly erroneous or contrary to law.  Indeed, Plaintiff's counsel cites no authority supporting the opposite conclusion.

### b.    Insisting that the accrual method must be used and failure to dismiss

Second, Judge Goodman ordered sanctions for Plaintiff's counsel clinging "to an incorrect legal theory and insist[ing] that the accrual method must be used."  (Order at 54.)

> Plaintiff's counsel repeatedly and stridently urged an incorrect legal argument -- that the accrual method was mandatory.  Despite learning of federal regulations, an IRS publication, and case-law authority that permitted Abalux to use the cash method, they did not abandon their incorrect and misplaced view.  Given this stubborn failure to concede defeat on jurisdictional grounds, they magnified the prejudice to Defendants by steadfastly refusing to dismiss the case. That was not justified and it warrants a sanctions award.

(<u>Id.</u> at 55.)

Plaintiff's counsel appears to argue that there was a sound basis to argue that the Court was required to apply the accrual method because prior to the Eleventh Circuit's opinion affirming the Court's judgment in this case, there was no opinion holding that the accrual method was <u>not</u> mandatory.  (<u>See</u> <u>id.</u> at 10.)  This argument approaches frivolity.

23

The federal regulations implementing the FLSA permit an employer to choose its method of accounting, "provided the same accounting procedure is used consistently and that such procedure accurately reflects the annual volume of sales or business." 29 C.F.R. § 779.266(b). Plaintiff's counsel was made aware that Abalux used the cash basis method of accounting based on a calendar year, and Defendants explained in their response to Plaintiff's motion for partial summary judgment that such a method was permissible under the Regulations, an IRS publication, and a case from the Eleventh Circuit Court of Appeals.[12] (See D.E. 66 at 6-10.)

To the Court's knowledge, no court has ever held that the accrual method <u>must</u> be used to determine FLSA enterprise liability. Certainly, Plaintiff's counsel has not cited any such authority. In fact, in the case that Plaintiff's counsel has relied upon throughout these proceedings, the Eleventh Circuit affirmed the entry of summary judgment in favor of an employer that used a <u>cash basis</u> method of accounting. <u>See Arilus v. Joseph A. DiEmmanuele, Jr., Inc.</u> 895 F. Supp. 2d at 1264, <u>aff'd</u> 522 F. App'x 881. Although Judge Hoeveler noted in <u>Arilus</u> that "the accrual method <u>appears to be preferable</u> as a measure of an employer's actual annual sales or business done[,]" 895 F. Supp. 2d at 1265 (emphasis added), the Court cannot conclude that Plaintiff's counsel had a sound basis to argue that the Court <u>must</u> use the accrual method to determine Abalux's gross

---

[12] This was not the first time Defendants' explained to Plaintiff's counsel that Abalux used the acceptable cash basis method of accounting, as it was also included in their fifth renewed Rule 11 motion and discussed at length at a discovery hearing before Judge Goodman. (<u>See</u> Report at 9-12, 38.)

volume of sales.  Indeed, such a position would have been contrary to <u>Arilus</u> itself and the federal regulations permitting an employer to choose its method of accounting.

"Rule 11 sanctions are proper . . . 'when the party files a pleading that is based on a legal theory that has no reasonable chance of success and that cannot be advanced as a reasonable argument to change existing law . . . .'"  <u>Worldwide Primates, Inc. v. McGreal</u>, 87 F.3d 1252, 1254 (11th Cir. 1996) (quoting <u>Jones v. Int'l Riding Helmets, Ltd.</u>, 49 F.3d 692, 694 (11th Cir. 1996)).  Similarly, a court can impose sanctions under 28 U.S.C. § 1927 upon an attorney who engages in "unreasonable and vexatious" conduct that "multiplies the proceedings," so long as the dollar amount of the sanction bears a financial nexus to the excess proceedings.  <u>Peterson v. BMI Refractories</u>, 124 F.3d 1386, 1396 (11th Cir. 1997).  Objectively reckless conduct is sufficient to justify sanctions under Section 1927 even if the attorney does not act knowingly and malevolently.  <u>Norelus v. Denny's, Inc.</u>, 628 F.3d 1270, 1291 (11th Cir. 2010); <u>Amlong & Amlong, P.A. v. Denny's, Inc.</u>, 500 F.3d 1230, 1241 (11th Cir. 2007)).

The Court concludes that Judge Goodman's finding that sanctions are warranted for asserting a baseless legal theory (i.e., one with no reasonable chance of success) and failing to voluntarily dismiss the case is not clearly erroneous or contrary to law.  Plaintiff's counsel cites no authority supporting the opposite conclusion.

### C.    Additional sanctions

Finally, Defendants request additional sanctions for having to respond to the instant Motion.  (Resp. at 8.)  Although further sanctions may be warranted, the Court denies the request.

25

**IV.    Conclusion**

Accordingly, it is **ORDERED AND ADJUDGED** that:

**1.**    Plaintiff's Counsel's Motion to Overrule and Vacate Judge Goodman's

Sanctions Order (D.E. 164) is **DENIED**; and

**2.**    Defendants' counsel's request for further sanctions for having to respond to

Plaintiff's Counsel's Motion is **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida this 17th day of

December, 2018.

**JOAN A. LENARD**
**UNITED STATES DISTRICT JUDGE**