UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 16-20872-CIV-LENARD/GOODMAN

JESUS LAZARO COLLAR,

Plaintiff,

v.

ABALUX, INC., et al.,

Defendants.

_____/

**OMNIBUS REPORT AND RECOMMENDATIONS ON [ECF NO. 242]
DEFENDANTS' MOTION TO DETERMINE APPELLATE SANCTIONS AND FOR
AN AWARD OF FEES RELATED TO THESE PROCEEDINGS, AND ON
[ECF NO. 243] DEFENDANTS' MOTION FOR RELEASE OF FUNDS FROM
<u>SUPERSEDEAS BOND</u>**

Summary judgment was previously awarded in Defendants' favor [ECF No. 97]

and the Undersigned entered a sanctions award in the amount of $27,171.80 against J.H.

Zidell, P.A. and attorney David Kelly, Esq. ("Plaintiff's counsel") for pursuing a

frivolous lawsuit against Defendants [ECF No. 197]. Plaintiff's counsel appealed the

order granting sanctions to the Eleventh Circuit and lost the appeal. [ECF Nos. 213;

236]. The Eleventh Circuit granted Defendants' motion for an award of sanctions

against Plaintiff's counsel for pursuing a frivolous appeal and awarded Defendants

double costs and reasonable attorney's fees in defending the appeal. [ECF No. 236, p. 3].

The Eleventh Circuit remanded the matter to the District Court to determine the amount of fees for defense of the appeal, which was referred to the Undersigned by United States District Court Judge Joan A. Lenard. [ECF Nos. 237; 238]. Defendants then filed a verified motion to determine the amount of the fees and for an award of fees related to these proceedings. [ECF No. 242]. Plaintiff's counsel filed a response in opposition to the motion [ECF No. 245], Defendants filed a reply [ECF No. 253], and Plaintiff's counsel filed a Court-authorized sur-reply [ECF No. 257].

Subsequently, Defendants filed a verified notice of additional fees incurred related to these proceedings on remand [ECF No. 258], and Plaintiff's counsel filed a response in opposition to Defendants' notice of filing additional billing records and to the request for additional fees [ECF No. 259].

Additionally, because the appeal relating to the $27,171.80 sanctions award entered against Plaintiff's counsel has been resolved in Defendants' favor, Defendants moved the Court to lift the stay of execution and direct the Clerk of Court to disburse funds from the supersedeas account to satisfy the existing sanctions award. [ECF No. 243]. Plaintiff's counsel filed a response in opposition [ECF No. 246] and Defendants filed a reply [ECF No. 250].

For the reasons discussed below, the Undersigned **respectfully recommends** that the District Court award Defendants **$15,920** in reasonable attorney's fees along with the $2,000.48 in costs mandated by the Eleventh Circuit against J.H. Zidell, P.A.

and attorney David Kelly, Esq. (jointly and severally) for the frivolous appeal of the order granting sanctions.

Further, the Undersigned **respectfully recommends** that the District Court grant Defendants' motion for an order lifting the stay of execution and direct the Clerk of Court to calculate post-judgment interest on the $27,171,80 amount from March 6, 2019 through the date of payment. The Clerk should then pay this total amount to Ms. Langbein in partial satisfaction of the total sanctions award at the trial and appellate levels.

## I.     Factual and Procedural Background

Plaintiff Jesus Lazaro Collar filed a Fair Labor Standards Act lawsuit against Defendants, and Judge Lenard granted Defendants' summary judgment motion (and simultaneously denied Plaintiff's partial summary judgment motion). [ECF Nos. 1; 97]. Defendants filed a verified motion for sanctions against Plaintiff's counsel, and the Undersigned granted the motion. [ECF Nos. 124; 152]. Subsequently, the Undersigned determined the amount of sanctions award against Plaintiff's counsel jointly and severally -- $26,989.20 in attorney's fees and $182.60 in costs for a total amount of $27,171,80. [ECF No. 197].

Plaintiff's counsel filed an appeal of the order granting Defendant's motion for sanctions and the amount of sanctions awarded. [ECF No. 213]. In anticipation of the appeal, the District Court granted Plaintiff's counsel's request to post a bond in the

amount of $29,899.98 (110% of the judgment amount) and stay collections pending resolution of the appeal. [ECF No. 207].

Ultimately, the Eleventh Circuit affirmed the Undersigned's award of sanctions. [ECF Nos. 236]. The Eleventh Circuit also awarded Defendants' motion for an award of sanctions under Rule 38. *Id.* The Eleventh Circuit ordered that Plaintiff's counsel pay double costs ($2,000.48) in addition to an award of reasonable appellate attorney's fees and remanded the case back to the District Court for a determination of the amount of reasonable fees. *Id.* Judge Lenard referred the matter of reasonable attorney's fees to the Undersigned for determination. [ECF No. 237].

II.   <u>**Applicable Legal Standards and Analysis**</u>

a.   *Amount of Appellate Attorney's Fees*

The Eleventh Circuit has already determined that Defendants are entitled to reasonable attorney's fees for Plaintiff's counsel's pursuit of a frivolous appeal. [ECF No. 238]. However, Plaintiff's counsel argues that the Court should award Defendants zero dollars in attorney's fees because defense counsel, Leslie Langbein, agreed with her clients (who are no longer actively in business and cannot pay her fees) that she would defend the sanctions order appeal with the understanding that any appellate fees and costs awarded by the Eleventh Circuit would be compensation for her services. [ECF No. 242-3, pp. 5-6].

Plaintiff's counsel further argues that because Defendants have not paid for Ms. Langbein's fees associated with defending the appeal and only Ms. Langbein stands to benefit from the fees award, Defendants are entitled to zero fees. [ECF No. 245, pp. 4-5].

The Undersigned disagrees. Defendants do have a financial stake in defending the appeal. If they did not defend the sanctions award imposed against Plaintiff's counsel and lost the appeal, then Defendants would be responsible for the $27,171.80 in fees and costs previously awarded in their favor.[1]

Plaintiff's counsel does not point to any authority providing that a party has to actually pay his or her attorney's fees in order to be entitled to fees for sanctionable conduct. In fact, a party who is represented under a contingency fee agreement or one represented by a nonprofit is still entitled to statutory reasonable attorney's fees. *See Blanchard v. Bergeron*, 489 U.S. 87, 95 (1989) (finding that lodestar calculation should still be applied in cases involving a contingency fee agreement, and pointing out "[t]hat a nonprofit legal services organization may contractually have agreed not to charge any fee of a civil rights plaintiff does not preclude the award of a reasonable fee to a prevailing party in a § 1983 action"); *see also Kounelis v. Sherrer*, 529 F. Supp. 2d 503, 522 (D.N.J. 2008) (finding that plaintiff represented by pro bono counsel in § 1983 action was entitled to costs and attorney's fees for defendant's sanctionable conduct).

---

[1] According to Defendants, they "continue to pay undersigned counsel for their fees and costs at the trial level and the first appeal at the rate of $500 per month. However, Mr. Cabral lost his job in March, 2020 and only paid $100 towards the balance in April and May, 2020." [ECF No. 253, p. 6, n. 6].

Accordingly, the Undersigned does not find that Plaintiff's counsel should be able to escape sanctions for bringing a frivolous appeal simply because Ms. Langbein entered into an agreement with Defendants providing that she would not get any fees for defending the appeal unless the Eleventh Circuit awarded Defendants attorney's fees.

Under both Florida and federal common law, the starting point in fashioning an award of attorneys' fees is to multiply the number of hours reasonably expended by a reasonable hourly rate, resulting in a "lodestar" amount. *Florida Patient's Comp. Fund v. Rowe*, 472 So. 2d 1145, 1150 (Fla. 1985) (adopting the federal lodestar approach for calculating a reasonable attorney's fee); *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).

### i. *Hourly Rate*

A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experiences and reputation. *See Norman v. Housing Auth. of the City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988); *see also Coy v. Allstate Floridian Ins. Corp.*, No. 2:05-cv-103-FtM-34DNF, 2007 WL 1732098, at *8 (M.D. Fla. June 14, 2007).

In determining the prevailing market rates, a court should consider several factors, including "the attorney's customary fee, the skill required to perform the legal services, the attorney's experience, reputation and ability, the time constraints involved,

preclusion from other employment . . . the undesirability of the case, the attorney's relationship to the client, and awards in similar cases." *Leon v. Atlass Systems Inc.*, No. 15-24428-Civ, 2016 WL 1692107, at *3 (S.D. Fla. Apr. 19, 2016) (citing *Mallory v. Harkness*, 923 F. Supp. 1546, 1555 (S.D. Fla. 1996)).

The applicant bears the burden of producing evidence that the requested rate is in line with prevailing market rates, *NAACP v. City of Evergreen*, 812 F.2d 1332, 1337 (11th Cir. 1987), and such evidence, at a minimum, must be "more than the affidavit of the attorney performing the work." *Norman*, 836 F.2d at 1299.

Here, Defendants seek between $400-$425 an hour for Ms. Langbein's time spent defending Plaintiff's counsel's appeal of the order awarding sanctions. Ms. Langbein has 40 years of experience in labor and employment law. [ECF No. 242-3]. Mr. Daniel R. Levine, a board-certified specialist in labor and employment law, submitted a declaration which explains that he charges $450 dollars an hour and that a rate of $425-$475 an hour would be reasonable for someone with Ms. Langbein's skill and experience. [ECF No. 242-4, p. 4]. Ms. Robyn S. Hankins, who has practiced in the area of employment law for over 25 years and is also board certified, also submitted a declaration (stating that she found an hourly rate of $425 to be reasonable for Ms. Langbein's work on the appeal). [ECF No. 242-4, pp. 10-11].

Further, Ms. Langbein has provided retainer agreements between her firm and other clients, which were executed in 2019, providing that her hourly rate is $400 per hour. [ECF No. 242-6, pp. 3, 6, 9].

The Undersigned previously considered what a reasonable hourly rate for Ms. Langbein's work in this case is when determining the reasonable attorney's fees for the order awarding sanctions:

> Considering the Undersigned's own judgment and expertise and the unusual circumstances underlying the retainer agreements, the Undersigned will use a $360 hourly rate for Ms. Langbein. The Undersigned acknowledges that Ms. Langbein is an experienced and well-respected attorney who focuses her practice on employment law, including the defense of FLSA cases. Under other circumstances, the Undersigned might award her $400 per hour. But the circumstances here are unique.

> Defendants and their counsel explain that the hourly rate was $325 for the initial attorney work incurred in trying to persuade Plaintiff to voluntarily dismiss the case. The hourly fee was to be increased if the first strategy failed (and full-scale litigation were to become necessary). But it is difficult to discern a precise point when the $325-per-hour strategy stopped and morphed into a litigation battle with no chance of convincing Plaintiff to drop the case (at a rate of $400 to $450 per hour). Many of the Rule 11 motions that defense counsel served were designed to pressure Plaintiff into dismissing his lawsuit.

> In addition to the difficulty in pinpointing a particular date when the hourly fee changed, the Undersigned's ability to determine a reasonable fee is further complicated by Defendants' failure to reveal how much money they have paid Ms. Langbein to date. In fact, Defendants redacted that information from the amended retainer agreement that they filed with the Court. This absence of information militates in favor of Plaintiff's counsel's argument that Defendants are seeking more fees than they are actually obligated to pay.

Furthermore, the explanations about the evolving nature of the retainer agreement is less than comprehensive and does not convince me that Defendants are actually obligated to pay Ms. Langbein at a rate of $400 to $450 per hour. Instead, it seems as though Defendants might not themselves pay Ms. Langbein any more money. Instead, it appears they stopped paying her some time ago and the arrangement is for Ms. Langbein to rely only on the payment of a sanctions award for her fees.

To illustrate this dilemma further, if the Undersigned were to enter a sanctions award based on a $425 hourly fee but Plaintiff's counsel failed to pay, would Ms. Langbein still seek to collect her unpaid fees from her own clients based on the $425 hourly rate? The answer is unclear, as the declarations and submissions filed by Defendants do not directly address that issue and do not provide a specific answer. If the answer is "no," then that suggests that another, lesser hourly rate should be used.

In light of this atypical, shifting, and murky scenario concerning the fees agreement between counsel and her client, the Undersigned deems it prudent to err on the side of caution and use a $360 hourly rate for defense of this FLSA lawsuit.

[ECF No. 197, pp. 7-9].

Accordingly, the Undersigned will use the $360 hourly rate as a starting point.

*See Manning v. Sch. Bd. of Hillsborough Cty.*, FL, 135 F. Supp. 2d 1192, 1196 (M.D. Fla. 2001) ("As the law of the case, the starting point for this Court in determining the hourly rates for each attorney must be the rates this Court awarded in its [prior] Order.").

However, the Undersigned also takes into consideration the fact that since the time the Undersigned considered what a reasonable hourly rate should be, Ms. Langbein has gained additional experience, market rates likely increased slightly, and she has raised her hourly rate with her clients. *See id.* ("In addition to beginning with

the rates previously awarded in September 1999, the Court recognizes that in the period since that Order was entered, attorneys' fees have likely risen in the Tampa area. The Court also recognizes that in that time period, Dawson and Bolden have likely gained experience.").

Further, the ambiguity regarding whether full-scale litigation had commenced at the time the appellate fees were incurred by Ms. Langbein no longer exists. The fees incurred defending the sanctions award were incurred in 2019, well after the point when full-scale litigation between the parties had begun.

Accordingly, considering the Undersigned's expertise and judgment, along with the additional evidence presented by Ms. Langbein, the Undersigned will still err on the side of caution[2] but finds that a slightly higher hourly rate of **$400** is reasonable here for the appellate work performed by Ms. Langbein in late 2019.

The Undersigned disagrees with Plaintiff's counsel's argument that the law of the case doctrine and judicial estoppel require that the Court apply the same exact hourly rate that it found to be reasonable for prior legal work performed in this case by

---

[2]    The Undersigned further notes that here, as discussed in the Undersigned's prior Order [ECF No. 197, p. 11]:

> [A]ll of the legal work was done by the senior partner of the firm: Ms. Langbein. The Undersigned recognizes that Ms. Langbein may be the only attorney who regularly practices at her firm, but not all of the legal services required an attorney as experienced as her. The fact that Ms. Langbein did not have associates with lower hourly billing rates should not be used to penalize the parties responsible for paying the fees as a sanction (i.e., Plaintiff's counsel).

Ms. Langbein to the fees incurred defending the appeal. Ms. Langbein is not seeking to modify the hourly rate already determined by this Court to be reasonable for her work performed at the district court level. Rather, she is asking that a higher rate be applied for her fees incurred at a later time (in late 2019) for her appellate work.

The Undersigned is not disregarding the prior hourly rate determination, but rather uses it as a *starting point* to help determine what Ms. Langbein's later hourly rate should be. This does not contradict the law of the case. *See generally Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 815-16 (1988) ("As most commonly defined, the doctrine of the law of the case posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.").

### ii. *Number of Hours*

The second half of the lodestar equation is the hours reasonably expended. The moving party bears the burden of providing the Court with sufficiently detailed records so that the Court can assess the time claimed for each activity. *Norman*, 836 F.2d at 1303. The fee applicants must exercise "billing judgment," meaning that they must exclude from their petition hours that would be unreasonable to bill a client, and therefore to one's adversary, irrespective of the skill, reputation, or experience of counsel. *Id.* at 1301. For its part, the Court must exercise its own judgment when reviewing a claim. *Id.* at 1301-02. In particular, the Court must exclude "excessive, redundant or otherwise

unnecessary" hours from its calculation of hours reasonably expended. *Blue Water Marine Services, Inc. v. M/Y Natalita III*, No. 08-20739, 2010 WL 1330265, at *7 (S.D. Fla. Feb. 2, 2010) (quoting *Norman*, 836 F.2d at 1301).

Here, Defendants are seeking attorney's fees for 46.4 hours of work incurred defending the appeal. [ECF No. 242, p. 2]. Ms. Langbein provided a declaration and her timesheets. According to Ms. Langbein's declaration:

> I estimate that I cut about 10 hours of time from the billing statement due to what I considered excessive time attributable to researching and Shepardizing cases, drafting/revising arguments in the Answer Brief; and cutting content from the Answer Brief to meet the page limit. The Timeslips billing statement also excludes about 1.3 hours I spent on 12/3/19 reading and annotating Plaintiff's Counsel's Initial Brief.

[ECF No. 242-3, p. 3].

However, Plaintiff's counsel has specific objections to all of Ms. Langbein's entries.

First, Plaintiff's counsel argues that the following entries for research are vague, include block-billing, are excessive, and it is unclear what purpose the research served. [ECF No. 245, p. 13].

| | | | | |
|---|---|---|---|---|
| 12/7/2019 LWL | Research | | 1.50 | 637.50 |
| | read and review cases cited in Collar's brief (up to McMahon case on Table of Citations) | $425.00/hr | | |
| 12/8/2019 LWL | Continue | | 1.60 | 680.00 |
| | researching, reading and notating cases cited in Collar's Table of Citations | $425.00/hr | | |

Defendants respond that Ms. Langbein read these cases because Appellant had not previously relied on these cases. [ECF No. 253, p. 11]. The Undersigned agrees with

Plaintiff's counsel in part. It appears that as a starting point, Ms. Langbein read all of the cases cited in Appellant's brief. It is unclear whether these cases were reviewed as part of the drafting or to analyze specific portions, but presumably this knowledge of the cases would have helped Ms. Langbein later, when she was drafting the answer brief. Accordingly, because the necessity for the entries is vague, the Undersigned finds that **1.5** hours should be deducted here.

Next, Plaintiff's counsel argues that Ms. Langbein's 12/9/19 entry for "Begin drafting statement of issues, statement of case" for Appellee's answer brief is excessive and that "substantially similar" arguments were made in Defendant's motion for sanctions [ECF No. 124]. Plaintiff's counsel has provided a chart of the portions he believes are substantially similar. [ECF No. 245-3]. The Undersigned has reviewed the chart, along with the motion for sanctions [ECF No. 124] and Appellee's answer brief.

Plaintiff's counsel is correct that many of the same facts are included in these submissions, which makes sense since the appeal was on the order granting the motion for sanctions. However, it does not appear that large portions of the motion for sanctions were copied and pasted into the answer brief. Thus, the Undersigned does not find the entry to be excessive or redundant.

Next, Plaintiff's counsel challenges the following entry for being excessive and vague (as to what cases were researched).

| 12/10/2019 LWL | Review | 11.70 |
| | docket and determine what needs to be included in appendix that was not included in Zidell's appendix (2.4).  Research on cases in 11th Cir. on abuse of discretion by trial court in awarding sanctions.  Begin drafting 2nd  point on appeal.  Check rules on what is included in page limitation;  go back and edit Statement of case to delete portions | $425.00/hr |

The Undersigned agrees that the entry is somewhat vague for an 11.70-hour billing entry, specifically as it relates to the case research, and it appears somewhat excessive. Accordingly, the Undersigned finds that this entry should be reduced by **two** hours.

Regarding the next entry on 12/11/2019, Defendants pointed out that the entry included a typo (.7, which should have been 2.7), which explains why the individual tasks did not add up to the total for that day of 7.6 hours claimed. Otherwise, the Undersigned disagrees that the time spent was excessive or redundant.

Plaintiff's counsel argues that the next entry on 12/12/2019 is excessive and constitutes impermissible block-billing.

| 12/12/2019 LWL | Continue | 7.50 |
| | drafting brief. Additional research on the issue of charts;  review Magistrate's decision; review documents on docket to determine how many times Plaintiffs' Counsel's referred or used charts; review Marcos' declarations to determine when she first notified Plaintiffs' Counsel about issues with charts and when she notified Plaintiffs' Ccounsel about need to amend tax returns.  draft discussion about Webasto Thermal.  (1:30 -9:00 p.m) | $425.00/hr |

The Undersigned agrees that even though all of these tasks may add up to 7.5 hours, without any explanation as to how long the individual tasks took, it is difficult to know whether the time spent on each task was reasonable. Accordingly, the Undersigned finds that this entry should be reduced by **one** hour.

Regarding the entry on 12/13/2019, the Undersigned finds excessive the 5.6 hours spent to "[d]etermine whether to discuss cases cited by Plaintiffs' Counsel and whether to add in additional research that I found on frivolous arguments *Weissman v. Williams*." [ECF No. 242-3, p. 11]. Thus, the Undersigned finds that this entry should be reduced by **one** hour.

Regarding the .7 entry incurred by Ms. Langbein relating to Defendant's citation to the *Cadlerock* case, it appears that this case may have been miscited by Defendants and Defendants filed a notice regarding this. Accordingly, the Undersigned finds that this entry for **.7** should be removed.

Finally, the Undersigned finds that the **.4** of time incurred in April 2020 associated with drafting the motion for appellate attorney's fees should be excluded because it was not incurred defending the appeal.

Accordingly, the Undersigned finds that 6.6 hours should be deducted from the total amount sought by Defendants of 46.4, for a total amount of **39.8**. Using a $400 hourly rate, the Undersigned **respectfully recommends** that the District Court award Defendants **$15,920** in attorney's fees for defending the frivolous appeal of the order granting sanctions.

**b.** *Additional fees for the attorney's fees briefing*

Defendants also seek an additional award for attorney's fees and costs in connection with preparing this motion, "communications between undersigned counsel

15

and Mr. Zidell related to the Motion, research related to Plaintiff's Counsel's position that any award of appellate sanctions is limited by 'law of the case' and any reply or other filings that are necessitated by Plaintiff's Counsel's opposition to the relief sought." [ECF No. 242, pp. 2-3].

The Undersigned does not find that Defendants should be awarded fees for fees in light of the circumstances here. First, the Undersigned notes that awarding fees for fees here could result in a never-ending cycle of attorney's fees. If Defendants file a subsequent motion regarding what they believe the reasonable rate and number of hours to be, then Plaintiff's counsel files a response, Defendants could file a reply; and then Defendants could conceivably request that the Court award fees for that *additional* briefing leading, to yet another round of briefing.

The Undersigned acknowledges that Defendants would not be in this current predicament if Plaintiff's counsel had not appealed the original sanctions order. In addition, the fees briefing was unnecessarily extended by Plaintiff's counsel's litany of objections, including many half-a-page-long footnotes asserting all sorts of accusations, which Defendants had to address. However, at some point, enough is enough.

The Undersigned notes that Plaintiff's counsel attempted to resolve this matter before this issue was briefed by presenting a reasonable offer to settle the appellate fees -- 36 hours of time at a rate of $360 an hour, which, according to Plaintiff's counsel, was later raised to 39.6 hours at a rate of $360 an hour plus costs and interest. [ECF No. 245,

pp. 18-19]. But, apparently, Defendants did not agree because the settlement terms would include a confidentiality provision.

Accordingly, under the circumstances, the Undersigned does not find that Defendants should be awarded fees associated with the attorney's fees briefing.

### c. *Request for Costs*

The Eleventh Circuit entered an amended bill of costs providing that costs are taxable in the amount of $2,000.48 (which includes the court-ordered doubling of costs of $1,000.24). [ECF No. 249]. Plaintiff's counsel does not oppose this amount. [ECF No. 251]. Accordingly, pursuant to the Eleventh Circuit's mandate, Defendants are entitled to **$2,000.48** for costs incurred defending Plaintiff's counsel's appeal.

### d. *Release of Funds from Supersedeas Bond*

As discussed above, the District Court allowed Plaintiff's counsel to post a bond for the original sanctions award ($27,171.80) in the amount of $29,899.98 (110% of the judgment amount) and stay collections pending resolution of the appeal. [ECF No. 207]. Because the appeal relating to the original sanctions award was resolved in Defendants' favor, Defendants have filed a motion for an order lifting the stay of execution and directing the Clerk to disburse these funds to Defendants along with accrued interest to satisfy the judgment for the original sanctions award. [ECF No. 243]. Plaintiff's counsel filed a response in opposition [ECF No. 246] and Defendants filed a reply [ECF No.

250]. Plaintiff's counsel then filed a notice stating that they did **not** oppose the funds being disbursed and the application of post-judgment interest. [ECF No. 251, p. 1].

Defendants request that post-judgment interest be calculated from March 6, 2019 though the date of payment. [ECF No. 250, p. 4]. March 6, 2019 is the date that the Undersigned entered the Order determining the $27,171.80 sanctions award and constitutes a judgment. [ECF No. 197]. *See BankAtlantic v. Blythe Eastman Paine Webber, Inc.*, 12 F.3d 1045, 1053 (11th Cir. 1994) ("The proper date upon which interest shall be calculated for the sanction amount is July 10, 1989, the date of the sanction order."). "Under Section 1961, all money judgments recovered in civil cases in federal district court automatically bear interest from the date of entry of judgment." *Rodriguez v. Marble Care, Int'l, Inc.*, No. 10-23223-CIV, 2012 WL 7761546, at *3 (S.D. Fla. Nov. 16, 2012), report and recommendation approved, 2013 WL 1110800 (S.D. Fla. Mar. 11, 2013) (citing *Gele v. Wilson*, 616 F.2d 146, 148 (5th Cir. 1980).

Accordingly, the Undersigned **respectfully recommends** that the District Court grant Defendants' motion for an order lifting the stay of execution and direct the direct the Clerk of Court to calculate post-judgment interest on the $27,171,80 amount from March 6, 2019 through the date of payment. The Clerk should then pay this total amount to Ms. Langbein in partial satisfaction of the total sanctions award at the trial and appellate levels.

Finally, Defendants request fees for filing the motion to release the funds and their reply brief. It appears from the emails provided by Plaintiff's counsel that there was some confusion about whether the taxable costs had already been doubled by the Eleventh Circuit and the parties were squabbling over interest rates associated with the sanctions award when Defendants decided to file the motion to release the funds. [ECF No. 246-3]. It appears that a more-meaningful conferral between the parties would have likely resolved this issue without the need for further briefing. Accordingly, and for the reasons discussed above as it relates to Defendants' request for attorney's fees for briefing the appellate fees issue, the Undersigned does not find that Defendants should be awarded additional attorney's fees for briefing the issues relating to the motion to release the funds from the supersedeas bond.

### III.   <u>Conclusion</u>

For the reasons discussed above, the Undersigned **respectfully recommends** that the District Court award Defendants **$15,920** in attorney's fees along with the **$2,000.48** in costs mandated by the Eleventh Circuit against J.H. Zidell, P.A. and attorney David Kelly, Esq. (jointly and severally) for the frivolous appeal of the order granting sanctions.

Further, the Undersigned **respectfully recommends** that the District Court **grant** Defendants' motion for an order lifting the stay of execution and direct the Clerk of Court to calculate post-judgment interest on the $27,171,80 amount from March 6, 2019

through the date of payment. The Clerk should then pay this total amount to Ms. Langbein in partial satisfaction of the total sanctions award at the trial and appellate levels.

In addition, because Mr. Kelly is no longer with the Zidell law firm and is no longer counsel of record, the Zidell law firm is directed to (1) forward a copy of this Report and Recommendations to Mr. Kelly by email by the next business day following entry of this Report and Recommendations; and (2) submit an affidavit or declaration of compliance (including the date and time of the emailing) to the Undersigned's e-file inbox (goodman@flsd.uscourts.gov) by the day following the emailing to Mr. Kelly.

### IV.    <u>Objections</u>

The parties will have 14 days from the date of this Report and Recommendations within which to file written objections, if any, with the District Judge. Each party may file a response to the other party's objection within 14 days of the objection. Failure to file objections timely shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in the Report except upon grounds of plain error if necessary in the interests of justice. *See* 29 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir.

1989); 11th Cir. R. 3-1 (2016).

**RESPECTFULLY RECOMMENDED** in Chambers, at Miami, Florida, on

November 9, 2020

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to**:
The Honorable Joan A. Lenard
All counsel of record